TEXAS & NEW ORLEANS RAILROAD COMPANY v. W. J. MURRAY.

Decided December 14, 1910.

1.—Personal Injuries—Proximate Cause.

In considering the question of proximate cause, cases may arise where an injury is inflicted by an independent and disconnected agency which has supervened and brought about the final result, and still the injury will be charged to the original cause. In such cases, however, the intervening cause and its probable consequences must be such as could reasonably have been anticipated from the original act of negligence. The primary and intervening cause or

causes must constitute a continuous succession of events, so linked together as to make a natural whole.

### 2.—Same—Case Stated.

While handling a push-car, plaintiff, a railroad employee, was injured by the car falling against his leg through the negligence of a co-employee; plaintiff continued to work, and about two weeks afterwards he was again injured by the same leg giving way while he was handling heavy timbers; and again, about one month after the first injury, his uninjured leg slipped and thereby threw the entire weight of his body upon the leg which had been previously injured, and caused him to receive a violent fall which seriously injured the same leg. Held, in an action for damages against the railroad company, in which the company was charged with negligence only in the infliction of the first injury, said first injury was not the proximate cause of plaintiff's final injured condition, and the company therefore was not liable for the same.

### 3.—Proximate Cause—Test.

In determining the proximate cause, the intervention of an independent act of a third person or a voluntary independent act of the person injured between the act of negligence of which complaint is made and the injury sustained, which independent act is the immediate cause of the injury, is made the test of remoteness of cause of damage which precludes recovery.

#### ON MOTION FOR REHEARING.

### 4.—Requested Charge—Invited Error—Evidence Against.

A recital in a requested charge that, if the jury should find in favor of the plaintiff "under instructions given by the court," etc., affords presumptive evidence that the special charge was not requested until after the court had given the jury the main charge and hence any error in the main charge could not have been invited by the special charge.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Baker, Botts, Parker & Garwood, Lane, Wolters & Storey,* and *Wm. A. Vinson,* for appellant.—It not being claimed that the defendant was guilty of any negligence at the time the plaintiff was lifting the heavy timbers, and at the time he slipped and fell on the floor at the paymaster's office, and the evidence, as a whole, clearly showing that the injuries received by the plaintiff at such times were not caused by or attributable in any degree to the alleged negligence of the defendant at the time he was hurt by the hand car, it was error to admit testimony showing that plaintiff sustained any injuries at any time other than at the time of the first accident. Texas & P. Ry. Co. v. Bigham, 90 Texas, 224; Smith v. Ry. Co., 58 S. W., 151; Fort Worth & R. G. Ry. Co. v. Neely, 60 S. W., 282; Gulf, C. & S. F. Ry. Co. v. Shields, 29 S.W., 652; International & G. N. R. R. Co. v. Bergman, 64 S. W., 999; Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 274; Galveston, H. & S. A. Ry. Co. v. Chambers, 73 Texas, 296; San Antonio & A. P. Ry. Co. v. Trigo, 101 S. W., 254; International & G. N. R. R. Co. v. Rieden, 107 S. W., 661; St. Louis, K. & S. E. Ry. Co. v. Fultz, 120 S. W., 984; Pittsburg Reduction Co. v. Horton, 113 S. W., 647; Snow v. New York, N. H. & H. Ry. Co., 70 N. E., 205; Raymond v. Haverhill, 47 N. E., 101; Sheffer

v. Ry. Co., 105 U. S., 249; Daniels v. New York, N. H. & H. Ry. Co., 183 Mass., 393; Rapid Transit Ry. v. Smith, 98 Texas, 553.

*Ewing & Ring,* for appellee.—That the slipping at the pay station, which would not have caused the aggravated or additional injury at all without the primary injury, was a mere condition or occasion, and the primary injury the real cause of the fall and secondary injury, see 8 Am. & Eng. Ency. of Law, 2nd ed., pp. 567-574; and 21 *Id.,* pp. 485-495; Watson on Damages, secs. 62, 75, 148, 151; Houston & Texas Central Railroad Co. v. Maxwell (Texas Civ. App.), 128 S. W., 160, 163; Houston & T. C. Ry. v. Gerald, *Id.,* 166, 171; Weiting v. Town of Millstone (Wis.), 46 N. W., 879, 881; Postal Telegraph Cable Co. v. Hulsey (Ala.), 31 So., 527, 532; Brown v. C. M. & St. Paul Ry. Co. (Wis.), 11 N. W., 356; 1 Wigmore's Ev., sec. 12.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages arising from personal injuries alleged to have been caused by the negligence of appellant. It was alleged that appellee was an employee of appellant and while engaged in his work, with other employees, in the yards of appellant, in Houston, "in the operation of a hand or push car for defendant, and while they were engaged in moving such push car from the rails of one of defendant's tracks to another as incidental to and as a part of its operation, one of said employees of defendant (one Gibson) did, without warning to plaintiff, so negligently conduct himself in handling the end or part of the car he was holding as to cause or to permit it to fall upon or be thrown against plaintiff's leg and to strike the thigh thereof a few inches above the knee with great force and violence, whereby his leg, thigh and hip, and the muscles and nerves thereof, and cognate muscles and nerves, were so impaired that, as a natural and proximate result thereof, he has sustained the injuries hereinafter complained of." It was further alleged that appellee continued to work, and about two weeks after the injuries were inflicted he was again injured by his leg giving way while he was handling heavy timbers; and again about one month after the first injury he slipped on his uninjured leg and thereby threw the entire weight of his body upon the leg which had received the blow from the car, which gave way and caused him to receive a violent fall with the injured leg doubled under him, and became utterly helpless. The cause was tried by jury and resulted in a verdict and judgment in favor of appellee for $15,000.

The evidence showed that appellee was first hurt about September 15, 1907, whilst he and three other men were engaged in lifting a push car from the track it was on to put it on another track. While moving the car one of the men set down his corner with such violence as to jerk the corner to which appellee was holding out of his hands and throw it against his leg three or four inches above the knee of the right leg. He continued his work for two weeks although he suffered some pain in his leg. About two weeks after the injury, appellee was engaged in unloading lumber out of a grading car, and his hurt leg gave way and

he "kind of dropped down." He suffered very much from that catastrophe and he quit work. When pay day came around, about ten or twelve days after the second hurt, appellee walked to the shops to get his money. He received his check, went downstairs, and as he was walking across the floor to get a drink of water, he slipped on his uninjured leg and threw out the other to catch his weight, and he stated, "It went down with me sort of doubled up, twisted under me." There was sawdust and oil on the floor that caused him to slip.

Moody, a witness for appellee, stated the first hurt was caused by his negligently stumbling and throwing the car against appellee. The bruises on appellee's leg consisted of a small dark place on it just above the knee. He heard no complaints from appellee about the injury until the accident with the lumber. Dr. Neuhaus, a witness for appellee, testified: "Referring to the blow that counsel has questioned me about, and the condition of the man as I found him, the blow probably would not cause the dislocation that I found in the thigh without some other intervening cause. To have his history the way he came to me, if there is any confusion about it, the slipping probably gave rise to the fracture. The blow itself would probably not cause the injury up here without something intervening." The injury referred to was a fracture of the thigh.

The appellee alleged that the blow on the leg by the push car was the proximate cause of all the injuries received by him, and the cause was submitted on that theory to the jury.

The facts clearly indicate that the second and third injuries, while perhaps made possible by the first injury, were the result of independent agencies disconnected with the original cause of injury, and the fact that appellee was in the employ of appellant at the time of the subsequent injuries should have no weight in considering the proximate cause, but the case must be considered just as though he had no connection at the time with the service of appellant.

In considering the question of proximate cause, we keep in view the principle that cases may arise where an injury is inflicted by an independent and disconnected agency which has supervened and brought about the result, and still the injury will be charged to the original cause. This doctrine is an old one, which has been reiterated not only in the Federal courts, but in State courts. In the cases mentioned, however, the intervening cause and its probable consequences must be such as could reasonably have been anticipated from the original act of negligence. Scale v. Gulf, C. & S. F. Ry., 65 Texas, 274; Mexican Nat. Ry. v. Mussette, 86 Texas, 708; Texas & Pac. Ry. v. Bigham, 90 Texas, 223; Shippers Company v. Davidson, 35 Texas Civ. App., 558. As stated in the last cited case: "The proximate cause is not necessarily the one nearest to the event, but the primary cause may be the one proximately responsible for the result, although it may operate through one or more successive instruments. If the primary cause was so linked and bound to the events succeeding it that all together they create and become one continuous whole, the one event so operating upon the other as to tie

the result to the primary cause, the latter will be the proximate cause of the injury." It will be noted that in that case, as well as the cases reviewed therein, the first negligent act was the essential force in producing the injuries although other and independent causes co-operated with it in producing the result. In other words, the original wrongdoer had been guilty of an act of negligence from which it might have been reasonably anticipated that the injurious effects might be produced.

It is said in the case of Lane v. Atlantic Works, 111 Mass., 139, that "the test is to be found in the probable injurious consequences which were to be anticipated, not on the number of subsequent events and agencies which might arise"; or, as differently expressed by the Supreme Court of the United States in Milwaukee Railway v. Kellogg, 94 U. S., 469: "It is generally held that in order to warrant a finding that negligence, or that an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." In the case last cited, the question is asked, which applies with peculiar force in this case: "Did the facts constitute a continuous succession of events, so linked together as to make a natural whole; or was there some new and independent cause intervening between the wrong and injury?" In the light of the facts of this case, that question must be answered in the negative.

We start with the premise that it was negligent in Gibson to stumble and shove the push car against appellee, and that appellant was liable for all damages resulting from such negligence. That negligence is all that is charged against appellant. It is not claimed that the second injury was caused by any act of negligence at that time, nor is it claimed that there was any act of negligence when the third and most serious injury was inflicted by appellee slipping and falling and fracturing the hip of the injured leg. The whole negligence charged was the act of stumbling upon the part of the employee of appellant, and in order to fix the liability for damages arising from the last two accidents it must appear that they are so linked and bound to the original negligence as to make a natural whole and that there was no independent intervening cause; or that the intervening cause and its probable or reasonable consequences could have been anticipated by appellant. To state the matter as a concrete proposition, if there was an intervening cause that produced the succeeding events, in order to charge appellant with negligence in relation thereto, it must have reasonably anticipated that appellee would lift heavy timbers or do some similar act, and that the leg struck just above the knee by a push car would give way and that he would fall and injure himself; and that afterwards appellee would slip on his uninjured leg and would fall and fracture the hip of the injured leg. As said in Railway v. Bigham, herein cited: "In our opinion nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury to the person of plaintiff" by the two falls. Appellee did not slip on

account of his right leg being injured, because he slipped on the left leg, and that slipping was an independent cause of the injury which could not have been reasonably anticipated by appellant from the act of negligence in handling the push car. The cause of the slip made by the left foot was a greasy floor, which itself was entirely independent of the cause of the original injury. Appellee's theory, however, is that although the greasy floor caused the uninjured leg to slip he would not have fallen if his injured leg had not failed to sustain his weight when thrown upon it. We do not, however, think the contention, if sustained, would make the original negligence the proximate cause of the last injury.

In the case of Raymond v. City of Haverhill (Mass.), 47 N. E., 101, the plaintiff was injured in her ankle by a defect in the highway on June 18, 1894; and on October 9, thereafter, while endeavoring to get upon a settee in a hall, her weak ankle, injured as aforesaid, caused her to fall and sustain a fracture of the leg. The Supreme Judicial Court of Massachusetts held: "The damage received by the plaintiff from undertaking to step from the chair to the settee on October 9, 1894, when her right ankle failed to support her and she fell, is not a direct and immediate result of the accident which happened on June 18, 1894. She was not acting from any necessity caused by her previous injury, but acting independently and voluntarily; and as a result of her voluntary conduct she was again injured. A new and independent cause intervened between the original injury and the injury she received on October 9th." That case fits the injuries arising from the two accidents after the original one in this case, and would preclude recovery for either of them.

In the case of Snow v. New York, N. H. & H. Railway (Mass.), 70 N. E., 205, the wife of plaintiff had received injuries through the negligence of defendant, and as a result thereof she became subject to attacks of dizziness, and on one occasion when she got into a pantry sink by means of a chair, to see about a leak in the water pipe above the sink, she had one of the attacks and fell to the floor and broke her wrist. The Massachusetts court held: "The breaking of the wrist certainly was not the direct result of the collision that caused, or may have caused, conditions which contributed to it, and but for whose existence it would not perhaps have happened. But it can not be justly said, it seems to us, that the collision was the proximate cause of the broken wrist. That was due to her getting up into the pantry sink to look at the leak in the water pipe, and was the result of voluntary and independent action on her part." So in the case at bar the second injury was the result of the voluntary and independent act of appellee in handling lumber, and the third resulted from the uninjured foot slipping on a greasy floor.

We can see no escape from the conclusion that the stroke by the push car could not have been the direct and proximate cause of the injuries received in the subsequent accidents. The fact that appellee was working for appellant when the second injury was inflicted does not link it with the original negligence, but the case must be decided as though

appellee was lifting the timber of someone else when the second injury occurred, and was walking the floor of someone else or the sidewalk in a city when the third injury was inflicted. All of the injuries are traced back and are made dependent upon the original negligence through the theory of appellee, and that theory can not be sustained for the reason, as hereinbefore stated, because the last injuries can not be traced in a natural and continual sequence unbroken by any new cause. Laidlaw v. Sage, 158 N. Y., 73.

The acts of appellee in lifting the lumber, the slippery floor and the slipping of the uninjured left foot, were independent causes, created by the voluntary acts of appellee, which intervened and produced the results. In determining the proximate cause, the intervention of the independent act of a third person or the voluntary independent act of the person injured, between the act of negligence of which complaint is made and the injury sustained, which act is the immediate cause of the injury, is made the test of that remoteness of cause of damage which forbids recovery. Galveston, H. & S. A. Ry. v. Sweeney, 6 Texas Civ. App., 173.

The judgment is reversed and the cause remanded.

### ON MOTION FOR REHEARING.

As is often the case, when judgments of Courts of Civil Appeals are adverse to parties, much labor has been expended and great ingenuity evinced in this case in discovering and discussing supposed conflicts with decisions of other courts in Texas, and it is asserted that this court has overruled at least three decisions of the Supreme Court and numerous decisions of other Courts of Civil Appeals. "If it were so, it were a grievous fault," for in so far as the latter decisions are concerned it is a direct violation of a statute of this State which commands this court to certify questions to the Supreme Court when it is unable to agree with its sister Courts of Civil Appeals. However, there is no conflict, in our opinion, with any decision of any Texas court, either real or apparent.

The seventh assignment presents that the trial court erred in refusing a new trial, the first ground being "because the evidence does not support the verdict and judgment rendered," and the fifth ground being "because the testimony overwhelmingly shows that there was no negligence on the part of defendant authorizing a recovery by the plaintiff." The last ground is sufficient to bring in review the evidence on the subject of negligence as a whole and in all of its parts, and in considering that assignment we have not come in conflict with Searcy v. Grant, 90 Texas, 97, nor with Houston Oil Co. v. Kimball, 103 Texas, 94. This court undoubtedly has the power and authority to pass upon the sufficiency of the evidence to show negligence, and it has simply exercised that authority in this case in connection with the subsequent injuries inflicted on appellee.

The doctrine of invited error as applied to instructions requested by

a party but refused, was first announced in Texas by this court on October 16, 1895, in the case of International & G. N. Ry. v. Sein, 11 Texas Civ. App., 386 (33 S. W., 558), and on motion for rehearing in the same case the question was certified to the Supreme Court and it decided in the same way on December 16, 1895. (89 Texas, 63.) This court has followed that ruling in numerous cases since, and it has no desire to change its opinions or recede from its position on the question of invited error. The error, however, must be invited, which was not done in this case, as, we think, can be clearly shown from the record. When appellee sought to testify to the subsequent injuries, appellant objected to the testimony on the ground that the injuries were too remote "and that the original injury by the push car, if any, could not have been the proximate cause of his leg's giving way at a time when he was handling heavy timbers two weeks thereafter" and that the slipping on the floor and the fall was, for the same reasons, objectionable. The court overruled the objections and thereby committed itself to the principles afterwards written into the charge. The position assumed by the court was not only uninvited by appellant, but was taken over its objections.

Again, in special charges 5 and 6, which appellee so strenuously insists invited the error of the court, the language indicates that the charge of the court had already been given, for number 5 begins with the statement, "in the event that you should find in favor of plaintiff, under the instructions given by the court." And in special instruction 6 the charge of the court is recognized as being in existence and the special instruction is conditioned on certain matters stated therein.

We have concluded to modify our former opinion as to the injuries inflicted on appellee when he was, in discharge of his duties, lifting a plank, and hold that such injuries having, perhaps, arisen from weakness in the injured leg of appellee, appellant might have anticipated and had in contemplation such injuries, and the question as to the original cause producing those injuries would be one of fact to be determined by the jury. We adhere, however, to our opinion as to the last injuries which were caused by appellee's uninjured foot slipping on a greasy floor. In that instance there was the interposition of an independent, efficient cause which produced the injury. The motion for rehearing is overruled.

*Reversed and remanded.*