### ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS et al. v. BARR.

No. 12936.

Court of Civil Appeals of Texas. Dallas. Nov. 23, 1940.

On Rehearing Jan. 11, 1941.

On Second Motion for Rehearing Feb. 15, 1941.

Rehearing Denied March 15, 1941.

Locke, Locke, Dyer & Purnell and Hubert D. Johnson, all of Dallas, for appellants.

George M. Feild, of Dallas, for appellee.

BOND, Chief Justice.

Charles Jack Barr instituted this suit in a district court of Dallas County, for damages sustained by two automobiles, and for personal injuries, alleged to have resulted from (1) a collision of an automobile driven by appellee and appellants' train, and (2) a subsequent collision, at some distance from the first, of another automobile driven by appellee, and a telephone post. It is alleged that the first collision occurred at the railroad crossing on Ervay Street, in the City of Dallas, as the result of defendants' negligence; and,, that the injuries appellee there received were the direct cause, some hours later, of his losing consciousness and becoming incapable of operating and controlling the automobile in which he was then riding, resulting in the second collision, and further personal injuries and damage.

The specific acts and omissions of the defendant St. Louis Southwestern Railway Company, its agents and employees, alleged to have been negligent, proximately resulting in the accidents, are: (1) Operating the train involved across a public thoroughfare of the City of Dallas without adequate warning of the proximity and approach of such train; (2) no warning signal of any kind was maintained at said crossing, and no watchman or flagman stood there to advise the traveling public, and particularly the plaintiff, of the approaching train; and (3) no sounding of a

bell or whistle, or any other signal, or indication of any character, was given to warn of the approach of such train.

The defendants (appellants) answered by general denial and plea, in general terms, of contributory, inexcusable negligence of the plaintiff.

The case was submitted to a jury on special issues embodying the alleged specific negligence of the defendants and such contributory negligence of the plaintiff, as reflected by evidence and defendants' answer. The jury found defendants guilty of negligence, in the following respect: That, on the occasion in question, no employee of defendants gave any warning of the approaching switch engine and box cars, and that such failure was the proximate cause of the accidents; also found that defendants' employees in charge of the switch engine did give warning of the approaching engine and box cars, by ringing a bell and blowing a whistle. The jury acquitted plaintiff of all contributory negligence and assessed his damages at $1,400, apportioned—$1,320 for personal injuries, $45 damages to the automobile involved in the first collision, and $35 damages to the automobile involved in the second collision. On the verdict of the jury, the court entered judgment in favor of plaintiff for said sums, from which defendants have appealed.

The court's charge, in submitting issues 1, 2 and 3, embodying negligence proximately causing the first collision, in that no employee of defendant gave warning of the approaching train, is challenged as being too general to advise the jury of the nature of the inquiry. This was called to the court's attention by appropriate exceptions, before the charge was read to the jury. The issues read: "Special Issue 1. Do you find from a preponderance of the evidence that at the time and on the occasion in question there was no employee of the defendant giving any warning of the approach of the defendant's switch engine and box cars?" to which the jury answered "Yes"; then, special issues 2 and 3, whether such failure was negligence and proximately caused the first collision; to which, the jury answered "Yes".

It will be observed that issue 1 and the answer thereto embody in general terms all acts and omissions of negligence alleged against defendants, resulting in the collision of the trian and plaintiff's automobile, to the effect that defendants' employees failed to ring the bell, blow the whistle, give adequate warning, or maintain signals, watchman and flagman at the crossing. From such question and answer, manifestly, it cannot be determined readily in what particularity the jury found defendants' employees guilty. If the implication is that defendants' employees were guilty of failure to ring the bell and blow the whistle (and such interpretation evidently could be made of the findings), then such would be in conflict with the jury's further findings in response to special issues 4, 5, 6 and 6a, to the effect that defendants' employees were not guilty of negligence in those respects. The generality of the question submitted is the basis of appellants' assignment and, in our opinion, presents reversible error.

Appellants further assign error on such findings, as presenting the irreconcilable conflict. This is evident, and our conclusion finds support in appellee's brief, seeking to excuse the ill effects of such inconsistent findings, states that there is no evidence to sustain the special issues, and that questions 4 and 6a, relating to defendants' employees' failure to ring the bell and blow the whistle, were inadvertently submitted by the trial court. Absent objections to the court's charge, appellate courts must presume that the trial court acted in accordance with the evidence; therefore, in the light of the record, we must sustain the trial court in the submission of the issues.

A liberal interpretation of the evidence justified a jury finding on an issue of "unavoidable accident". In due time, appellants submitted an appropriate special charge embodying such issue, which was refused by the trial court. Unavoidable accident having been raised by the evidence, we think the court erred in refusing to submit the issue. The jury, having acquitted plaintiff of all contributory negligence in approaching the crossing where the collision occurred, could have, with due regard to the evidence and with propriety, acquitted the defendants of all negligence in the operation of its trian and maintenance of a watchman or flagman at the crossing. There is evidence that the train was backing toward the crossing at a rate of not more than 3 or 4 miles per hour; that the trainmen were keeping a proper lookout; that a flagman or switchman was standing at, or near, the intersection, and gave warning of the approaching train.

The track was clear to vision for 71 to 250 feet, according to distance away from the track at the intersection; no obstruction, under the control of the defendants, was there to prevent a person desiring to use the crossing from seeing the approaching train. On the other hand, appellee's version of the accident presents no negligence on his part; he was unable to see the approaching train until he was within 10 or 12 feet of the track, due to his view being obstructed by buildings, a large truck, and another automobile stationed near the track and between him and the approaching train. He testified that as soon as he saw the train, he applied his brakes and brought his car to a stop within a distance of about 12 feet; that he kept a proper lookout; and that he used ordinary care in approaching the crossing. Therefore, under such circumstances, the jury could, quite logically, have concluded that the collision was an unavoidable accident, that neither party was guilty of failing to exercise due care, and that the obstructions, over which neither had control, resulted in the collision.

■ If the evidence supports the finding that the collision was the result of some unknown cause, or in some manner which is not explained, or under circumstances differing from those relied upon and constituting a part of plaintiff's case, and which circumstances rebut the charge of alleged negligence for which defendant is responsible; and the jury could have found that neither party was negligent, then the issue of unavoidable accident is presented and should have been affirmatively submitted. Wichita Falls Traction Co. v. Craig, Tex. Civ.App., 250 S.W. 733; Colorado & S. R. Co. v. Rowe, Tex.Com.App., 238 S.W. 908; Russell v. Bailey, Tex.Civ.App., 290 S.W. 1108; Dallas Railway & Terminal Co. v. Garrison, Tex.Com.App., 45 S.W.2d 183; Texas & P. R. Co. v. Edwards, Tex.Com. App., 36 S.W.2d 477; Greer v. Thaman, Tex.Com.App., 55 S.W.2d 519; Orange & N. W. R. Co. v. Luther Harris, 127 Tex. 13, 89 S.W.2d 973.

■■ Assuming that the Railway Company had no watchman or flagman at the crossing to warn the public of the approaching train, as may be implied by the jury's response to issue 1,—that "no employee gave any warning", under settled rules of law in this state, such would not, in our opinion, preclude a necessity for submission of unavoidable accident, if raised by testimony. The error of the trial court in refusing to submit the issue is not cured by findings of the jury that defendants were negligent, and that such negligence was the proximate cause of the accident. Glazer v. Wheeler, Tex.Civ. App., 130 S.W.2d 353; El Paso Electric Co. v. Hedrick, Tex.Com.App., 60 S.W.2d 761; Dallas Ry. & Terminal Co. v. Garrison, Tex.Com.App., 45 S.W.2d 183.

■ Appellants raise the further question that there is not sufficient evidence of liability of the Railroad Company for the injuries and damage to plaintiff in the second collision; and that the trial court erred in refusing to submit special issue limiting liability to the first accident. Plaintiff, apparently without personal injury, drove his automobile from the scene of the first collision to his father's home, located several blocks away, rested, ate supper, and, while there, experienced some pain and headache which were allayed by sedatives. Thereafter, for the purpose of driving some two miles, or more, to his home, he entered another automobile and while enroute, lost consciousness and collided with a telephone post. There is no showing that plaintiff was suffering any ill effects from the first collision at the time he entered the second automobile; he entered it of his own free will; there was no urgency; he was under no compulsion or necessity to travel under such circumstances. There is no evidence that his unconsciousness, resulting in the second collision, was caused by the first collision, or that same was not superinduced by sedatives, or other causes. The independent intervening events leave to conjecture any causal connection between the two collisions. We think the jury should have been instructed specifically, in accordance with the charge requested by defendants, that no injuries sustained in the second collision could be considered in arriving at their verdict. The plaintiff, seemingly, did not know what occurred at the second collision. All expert medical testimony was, in effect, that plaintiff's injuries resulted from both accidents. The argument is not sound, which seeks to trace the immediate cause of plaintiff's injuries to the second collision, through previous stages of mental abnormality, physical suffering and medical treatment, following the first accident. Texas & N. O. R. Co. v. Murray, 63 Tex. Civ.App. 340, 132 S.W. 496.

On another trial, if the evidence is the same as here presented, liability of the defendants should be limited to the first accident by appropriate charge of the trial court.

The judgment of the court below is reversed and cause remanded.

Reversed and remanded.

## On Motion for Rehearing.

BOND, Chief Justice.

On motion for rehearing, appellee challenges our findings on several minor matters, not affecting our final conclusion that the issue of "unavoidable accident" was present and should have been submitted to the jury, and that there was irreconcilable conflict in findings of the jury, necessitating reversal and remand of the cause.

Reviewing the entire record, including the statement of facts of some 288 pages, independent of recitals in the respective briefs, we adhere to our former opinion and conclude further that there is not sufficient evidence to support findings, in effect, that the crossing in question was so extra-hazardous or unusually dangerous as to require the use by the Railroad Company of extraordinary means, such as the maintenance of a flagman or switchman at the crossing to warn the public of its trains. However, there is evidence that a switchman or "field-man", a Mr. James, was, at the time of the collision, at or near the crossing, discharging the duties of a flagman; also that a Mr. Ward, another of the train crew, was there and that he walked across the street intersection, in advance of the train, to clear the track of a truck, belonging to a Mr. Erwin, which was stationed on the east side of Ervay Street immediately north of the track. Mr. Ward and Mr. Thurman, another member of the train crew, testified that they relayed Mr. James' signals, that the crossing was clear and that the train could safely pass, to the engineer operating the train.

There is evidence that the train, immediately prior to the collision, was at a standstill on the west side of the intersection, destined to be backed eastward across Ervay Street and onto a switch track. Appellee approached the crossing from the south, and, in response to questions, testified that he entered Ervay Street several blocks south of the intersection, traveling at 20 to 25 miles per hour, and then reduced his speed to 10 to 15 miles per hour; that he was familiar with the crossing, having traveled across the tracks at that point five or six times daily for the last five or six years; had observed trains switching back and forth and was entirely familiar with the crossing and its surroundings; knew the general location of the building and tracks; knew the trains ran on the tracks, and that they passed over the crossing; that he reduced his speed on the occasion in question to about 10 or 15 miles per hour, up to the time he got on the track; started slackening his speed about 150 feet back; looked on the crossing for a flagman; that he always looked to see if a train was coming; that he didn't see a train or flagman, though he looked for one. He stated further that he saw a man but did not know whether he was a flagman, or who he was; he paid no attention to him; that the man was talking to a truck driver on the north side of the street; that his attention was directed to the truck and driver (Mr. Erwin)—naturally, was watching to see if the driver was going to pull his truck out in front of him. Testifying further, he said: "I was about 15 or 20 feet from the track at that time (when he observed the truck, and the men talking). I was not over 12 or 15 feet from the track when I first saw the train; I was going about 10 miles per hour. I applied my brakes as soon as I could and stopped the car on the track before the train got there. The train was right on me,—I don't know, 3 or 4 feet,—struck my car and pushed me 3 or 4 feet before it stopped. I did not see the train when it was standing over on the other side of the street, before it started to proceed into the street. The train wasn't in view at all until I got up close to the track. When I was back, say 50 or 60 feet from the track, I did not see the train. I never noticed the truck and truck driver at that time. I always looked for a train when back 100 feet or so from the track. At this time, I looked to the east and to the west for a train—in both directions. I first looked, when about 100 or 150 feet from the track; I did not see any train. I glanced back and forth in both directions, as I approached the track. When I was 100 feet back, the brick building (on southwest corner) obstructed my view; when I was 50 or 75 feet back, I looked for a train; didn't see any; if I had seen one, would have stopped. I looked

for a train when I was 30 to 40 feet from the track, but didn't see any. I again looked in both directions. At the speed I was going, I could have stopped my automobile when within 20 feet of the track. When the train struck my car it wasn't going so awful fast—I would say, 3 or 4 miles per hour * * * When I drove up on the track, the man, who afterwards told me he was one of the trainmen, was on the north side of the track, the northeast side, talking to this truck driver. I did not see him signal the engine for the train to stop. I did not know whether he did or did not signal the engineer. I saw him over there when I drove on the track."

The uncontroverted testimony shows further that the brick building, on the southwest corner of the street intersection, which appellee claims obstructed his view, stood 25.7 feet from the center of the switch track on which the train in question was moving, and 23.4 feet from the nearest rail. Ervay Street, between curbs, was 45 feet wide; there was a sidewalk 12 feet wide on the west side, and one 7 feet wide on the east side, making the total distance between the building on the southwest corner and the one on the southeast corner 64 feet. At 71 feet south (east of the center of Ervay Street), the view northwestward toward the railroad was unobstructed for a distance of 82 feet; at 44 feet south, the view of the railroad was unobstructed for 110 feet; at south 30 feet, unobstructed for more than a block, and at 20 feet, a clear view could be had up the railroad track as far as one could see. There was no obstruction whatsoever to a clear view between the relative positions above indicated.

Manifestly, there is no reason to believe that an approaching train could not have been seen by appellee had he exercised any degree of care for his own safety before attempting to cross the railroad track. The evidence reflects inexcusable negligence on his part. Had appellee looked, at any time after he reached a point 70 feet south of the south rail of the track upon which the switch engine and cars were approaching the crossing, he could have seen the train; and at any time before he reached a point, say 20 feet south of the track, his automobile could have been stopped before going upon the track. The street was level and the view in all directions unobstructed. Appellee testified he did not see the train crossing the street until too late to avoid the collision. His attention was directed to the Erwin truck, standing across the track, facing Ervay Street, which he thought was about to move into his lane of travel. As a consequence of his own failure to observe the slowly moving train, he drove upon the track, applied his brakes and stopped his car in front of it.

A judgment based upon alleged negligence of the Railroad Company in not having extraordinary means of warning at or upon the crossing should not be permitted to stand under the facts of this case. Appellee approached the intersection at 10 or 15 miles per hour, looked in both directions—east and west—at a crossing, unobstructed, entirely familiar to and much used by him, yet did not observe the train; thus it might well be said that he would not have seen a flagman, if one had been present.

Failure, if any, of the Railroad Company to have a flagman could not have been and was not the proximate cause of the collision. The train itself, upon the track, was sufficient warning and notice to persons about to use the crossing. Under the evidence, the crossing was not more than ordinarily dangerous, and reasonable minds could reach no conclusion other than that appellant was not guilty of negligence in not maintaining extra precautionary signals at such intersection. By an unbroken line of authorities, the rule seems to be well-established in Texas that appellant was under no obligation to maintain a flagman or resort to other extraordinary means to warn persons approaching said crossing, unless such crossing is more than ordinarily hazardous. Texas & N. O. R. Co. v. McMahan, Tex.Civ.App., 144 S.W.2d 1019; Texas & N. O. R. Co. v. Stratton, Tex.Civ. App., 74 S.W.2d 746; Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113; Thompson v. St. Louis Southwestern R. Co., Tex.Civ.App., 55 S.W.2d 1084, 1085; Robinson v. Houston Belt & Terminal R. Co., Tex.Civ.App., 23 S.W.2d 894, 895; St. Louis S. W. R. Co. v. Hill, Tex.Civ. App., 13 S.W.2d 420; Galveston-Houston Electric R. Co. v. Patella, Tex.Civ.App., 222 S.W. 615, 627; Smith v. Galveston-Houston Electric R. Co., Tex.Civ.App., 265 S. W. 267; Gillham v. St. Louis Southwestern R. Co., Tex.Civ.App., 241 S.W. 512; Galveston, H. & S. A. R. Co. v. Burr, Tex.Civ. App., 291 S.W. 299; Texas & N. O. R. Co.

v. Adams, Tex.Civ.App., 27 S.W.2d 331, 334; Louisiana Ry. & Nav. Co. v. Loudermilk, Tex.Civ.App., 295 S.W. 193.

Measured by this rule, the evidence in this case does not raise an issue of negligence on the part of appellant in the respects alleged in the petition. As stated above, appellee was familiar with the situation and surroundings of the crossing and had passed over it five or six times daily for the past five or six years. He paid no attention to the slowly moving train at a time when he could have stopped in safety, but was paying attention to Mr. Erwin and his truck, immediately across the track, until too late to stop his auomobile. His only excuse for not sooner slackening his speed and stopping before going upon the track is that he did not see the train, that he did not recognize the flagman, Mr. James, and that his attention was directed to the truck, thinking it might move forward in his line of travel. It seems to us, in view of appellee's admissions, that he must be .held guilty of negligence.

The case having been fully developed, and the evidence being insufficient to support findings by the jury to the effect that the crossing in question was more than ordinarily dangerous, and that the Railroad Company was guilty of negligence in failing to give adequate warning of the proximity and approach of its train, proximately causing the collision, appellee's motion for rehearing is overruled, the judgment heretofore rendered, remanding this cause, is set aside and judgment here rendered that appellee take nothing.

YOUNG, J., dissents on the rendition; otherwise, adheres to the original opinion.

On Second Motion for Rehearing.

PER CURIAM.

Appellee's second, or amended, motion for rehearing assigns error on our action in reversing and rendering this cause, because of the findings of the jury and the evidence recited in the record, to the effect that appellant had no flagman at the crossing to give warning, thus leading him into a sense of security that no train was approaching, fortified by proof that he had passed over the crossing many times each day for five or six years, when flagmen were stationed at the crossing, and he thereby relied on the absent flagman in approaching the zone of danger. We answer the assignment that there are no pleadings justifying such contention.

However, we realize the force of the assignment and other contentions, and that appellee may be able to strengthen his action, both in pleadings and evidence; also, that appellate courts are never justified in reversing and rendering a cause, when there is some reasonable ground that the case has not been fully developed and a reasonable probability of liability shown, on another trial. This, we think, is disclosed in appellee's motion; therefore, the judgment of this court heretofore rendering this cause in favor of appellants is set aside and the cause is remanded to the court below for new trial, in accordance with our original opinion.

Cause reversed and remanded.