HARRIS et al. v. TEXAS & P. RY. CO.

No. 706.

Court of Civil Appeals of Texas. Eastland.
May 16, 1930.

Rehearing Denied June 13, 1930.

Blanton, Blanton & Blanton, of Abilene, for appellants.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

HICKMAN, C. J.

This suit was instituted by appellants, Mrs. R. M. Harris and Stanley Harris, against the appellee, Texas & Pacific Railway Company, for damages sustained by them on account of the death of R. M. Harris, the husband of one of the appellants and the father of the other. No evidence was offered in behalf of the appellee, but, at the conclusion of appellants' evidence, the court, upon motion of appellee, peremptorily instructed the jury to return a verdict in its favor. Upon the verdict returned in obedience to the instruction, judgment was rendered that appellants take nothing, and the appeal is from that judgment.

The accident resulting in the death of R. M. Harris occurred in the city of Abilene where Plum street intersects the tracks of appellee. This intersection is in the industrial center of Abilene, and appellee's main track and seven switch tracks cross this street. The deceased, walking south on Plum street, approached the intersection, and found his progress blocked by a passing train. Automobiles had stopped on both sides of the crossing awaiting the passing of the train. The train was moving from west to east, and consisted of an engine with seven or eight cars attached. One car, about the middle of the train, was a flat car loaded with machinery. The other cars were box cars. When the deceased approached the crossing, he passed the automobiles which had stopped awaiting the passing of the train and paused for a moment. As the flat car crossed in front of deceased, he, evidently thinking that the entire train had passed, took a step forward into the moving train, and was struck by the box car behind the flat car and knocked under the moving train, where he was run over and killed. This occurred in daylight, with nothing to obstruct the deceased's view of the passing train.

The issues of negligence pleaded by appellants were as follows: "That said defendant was guilty of gross negligence per se: (1) in not having at said crossing a flagman or watchman to warn persons of danger and to hold them back at a safe distance from said tracks while its said switching of cars was going on; (2) in that no member of the crew in charge of said switch engine and cars was on the outside or north side of said switching train, visible to persons on said Plum street waiting at said intersection, so that said crew could warn persons attempting to cross said tracks of danger; and the said negligence of defendant was the proximate cause of the death of said R. M. Harris, and of the injuries he received that caused his death, and the damages that plaintiffs thereby sustained, as hereinafter mentioned, were the direct and proximate result of said negligence of defendant."

A. J. Jenkins, one of appellants' witnesses, described the accident in the following language: "On the afternoon of April 19, 1929, between 4 and 6 o'clock, I was on the Plum street crossing where the railroad crosses. * * * I was in George Scouten's Ford touring car. He stopped the car. A Chevrolet car drove up there and stopped to my right. A man walked up there smoking a pipe. He walked up just in front of the front wheel where we were standing, about fifteen feet from the track. This man went around the front wheel of the car and stopped. He walked up to the crossing. That is where he stopped. There wasn't any railroad man on that side of the tracks at that time. There was not any trainmen on the north side.

There were eight cars in that train, 7 box cars and 1 flat car. The flat car was the 4th car behind the engine. I noticed some automobiles on the south side of the train headed north, before this, waiting for the train to pass. When the flat car was opposite this man where he was smoking his pipe, those automobiles on the south side, approaching from the south, started. I could see over the flat car at that time. When the flat car got opposite the man on the ground, standing and smoking his pipe waiting for the train to pass, then he advanced forward. He took a step forward. A box car behind the flat car was the one that struck him and knocked him under the train. A man standing there on the ground like he was, when the flat car got opposite him, could see daylight across it. He could see over the car. He did start up, took one step and the box car hit him."

George Scouten, another of appellants' witnesses, testified: "On the afternoon of April 19, 1929, between 5 and 6 o'clock, I was at the Plum Street crossing about 15 feet from the track. I was with Johnnie Spivey and A. J. Jenkins in a Ford car, coming from the north on Plum Street and headed south. This man walked up there right by my car, up in about four or five feet of the track. There was a freight train, or a switch engine, there. I saw a flat car in between the box cars. There was something like three freight cars behind that flat car. I noticed some automobiles on the south side of the track headed north, waiting for the train to pass. When the flat car got up there even with this man, he started again. When he started, the box car next to the flat car hit him and knocked him down and dragged him along down the ties and cut him in two."

Johnnie Spivey, another of appellants' witnesses, testified: "My place of business is located at 616 Plum Street. When a man was killed down here on the Plum Street crossing between 5 and 6 o'clock I was sitting in a Ford car right at the crossing with George Scouten and A. J. Jenkins. We were headed south and fixing to cross that railroad crossing at the Plum Street crossing. We stopped there and waited for the train. A Chevrolet car drove up and stopped. There were some automobiles on the other side of the tracks headed north. I saw a white man walk up there smoking a pipe. He was between the car I was in and the Chevrolet. He was headed south. I figure he was about the distance from here to that water cooler from my car when he stopped. In that bob-tail train there was some box cars already ahead and then a flat car and then more box cars behind the flat car. When that flat car got even with this man, or about opposite him, I saw the automobiles on the other side of the tracks start coming toward us. They seemed to be starting up to come across the tracks when the flat car got opposite this man and the other cars started up. He advanced towards

these parties. The car that was next to the flat car struck him and knocked him down on the west side of the crossing on the planks which are across the tracks and dragged him until it got over the end of those planks, and the wheels ran over him."

As noted, all of this testimony came from appellants' own witnesses. No other testimony was introduced in any wise contradicting that above recited. The question presented here is whether the above evidence required the giving of a peremptory instruction.

There was much evidence introduced on the issue of the negligence of appellee in failing to maintain a flagman or watchman at the crossing to warn persons of danger. There are assignments in appellants' brief complaining of different rulings of the trial court on special exceptions to their petition wherein they alleged specific cases of accidents which had occurred at this crossing. There are also assignments complaining of the exclusion of evidence offered as to other accidents which had occurred at this same place. We do not find it necessary to pass specifically upon these assignments. We think the evidence was sufficient to present the issue as to appellee's negligence in failing to maintain a flagman or watchman at this intersection. The excluded evidence and the stricken pleadings all related to this particular issue and only strengthened appellants' case thereon. Since it is our opinion that the evidence was sufficient to raise this particular issue, it is immaterial to a determination of this appeal that evidence was excluded which would only have made their case stronger on that issue.

██ But, conceding that the facts raised the issue of negligence, the question for our determination is, Did they raise an issue of actionable negligence? Proximate cause is an essential of actionable negligence, and, without some evidence supporting this essential element, no issue of liability is presented. Even if appellee had been guilty of negligence per se, appellants would have had no cause of action thereon without a showing of proximate cause. Waterman Lumber Co. v. Beatty, 110 Tex. 227, 218 S. W. 363. The undisputed evidence establishes that the deceased had full knowledge of all the facts of which he would have been apprised by a watchman. Had there been a watchman at this crossing, his duty would have been only to warn of the approach of the train. The failure to warn the deceased in the instant case could not have possibly been the proximate cause of his death, because he had actual knowledge that a train was moving across his pathway but an arm's length in front of him. The most that could be claimed for a warning would be that it conveys knowledge of danger. The deceased had that actual knowledge without warning, and the conclusion is, to

our minds, inescapable that the failure to warn was not the proximate cause of his death.

■ The second ground of negligence relied upon was the failure of the railroad company to have a member of the crew on the north side of the train so as to warn persons attempting to cross said track of danger. What we have stated in regard to the first ground of alleged negligence applies equally to this ground. How the failure to have a person on the north side of the train to give warning of danger could have been the proximate cause of this injury, we are unable to see. No authority, so far as we are advised, announces the rule that a railroad company is an insurer of the safety of the traveling public. It owes no duty to forcefully prevent one from coming in contact with its moving train. The duty not to go into a place of known danger was upon the deceased, and the responsibility for his having done so cannot be charged to the railroad company.

This record presents a strange case. The deceased was 57 years of age, and was a successful business man. He owned farms, a mercantile business, and had oil interests. His annual income was $7,000 a year. He had held official positions. There is not the slightest suggestion of suicide, but all of the evidence refutes the thought. The only possible suggestion afforded by the record comes from the fact that, when the flat car got opposite him, he could see over it and thought the train had passed by. This suggests that his mind was momentarily preoccupied, and he was not conscious of the real situation. It may be that these considerations would have some bearing on the question of his contributory negligence, but they cannot create a liability against the railroad company. So to hold would be convicting the company of negligence for having a flat car in the middle of its train. This fact was not and could not be made the basis of an issue of negligence.

We believe the facts required the giving of the peremptory instruction, and the judgment of the trial court will therefore be affirmed.