## SOUTHERN UNDERWRITERS v. WILLIS et al.

### No. 1928.

Court of Civil Appeals of Texas. Waco.

Oct. 21, 1937.

Rehearing Denied Dec. 2, 1937.

Jos. W. Hale and Travis McCown, both of Waco, and Battaile & Burr, of Houston, for plaintiff in error.

W. L. Eason and Naman & Howell, all of Waco, for defendants in error.

GALLAGHER, Chief Justice.

This suit was instituted in the district court of McLennan county by the Southern Underwriters, a reciprocal insurance exchange, against Mrs. Rachel Willis and her three minor children, to set aside an order of the Industrial Accident Board awarding them compensation for the death of Kim

Buck Willis, who was the husband of Mrs. Willis and father of her minor children. She promptly filed a cross-action for herself and as next friend for her said children, in which she alleged, in substance, that one William Smith had a subcontract for doing certain work on the high school building in the city of Waco; that he employed the deceased to perform said work; and that the injuries which resulted in the death of said Willis were sustained by him as the result of an accident which occurred in the course of his employment. Said Southern Underwriters filed an answer to her cross-action, in which it specifically denied that the deceased, Willis, was employed by said Smith at the time he sustained the fatal injuries, and alleged that he was then an employee of the firm of Hamilton & Wiley. Said Smith was a general contractor, and had been such for many years. The deceased had from time to time been employed by him as a workman for about seven years. The Southern Underwriters was Smith's insurance carrier. Reference to other parties to the suit and the issues arising out of their joinder is deemed unnecessary.

The case was tried with a jury. At the close of the testimony, Southern Underwriters filed a request in general terms for an instructed verdict. The court refused such request, and submitted the case on special issues, which issues and the answers of the jury thereto, so far as material herein, were, in substance, as follows:

"(1) Was the deceased, at the time he received the injuries which resulted in his death, an employee of William Smith, as that term was defined in the charge? Answer: 'Yes.'

"(2) Was he, at the time he received such injuries, acting within the scope of his employment? Answer: 'Yes.' * * *

"(4) Was he at the time he received such injuries, an employee of Hamilton & Wiley? Answer: 'No.'"

The court entered judgment on said findings in favor of Mrs. Willis and her children as aforesaid for compensation. The Southern Underwriters presents the case to this court on writ of error.

### Opinion.

Plaintiff in error presents a single assignment, in which it asserts that the trial court erred in refusing to instruct the jury to return a verdict in its favor.

The Cameron Roofing Company had a contract to make certain changes in two rooms of the Waco High School. It let a part of the work to Hamilton & Wiley. They were carpenters and not engaged in general contracting. Their contract with the Roofing Company required them to "install flextile insulating and sound equipment —remove rings from beams and ceiling— install 2x2's on 36-inch centers, and run 1x2's across these on 24-inch centers—boring holes every half inch into the flextile, and doing all necessary carpenter work to complete the job." According to the testimony of Mr. Wiley, they assumed that all necessary holes in the concrete were already drilled, but when they began work they found that additional holes were necessary. They did not have the requisite equipment to drill such holes. It appears that such holes had to be bored with a drill or drills fastened in an electric apparatus called a hammer. Power was supplied by connection with an ordinary light socket. Said firm applied to said Smith for the loan of his hammer. He declined to lend it, but indicated in that connection that he would rent it if he also furnished his own man to operate it. It was finally agreed that Smith would furnish his hammer and a suitable man to operate it for $1 an hour. The deceased had operated the hammer for Smith in the execution by him of various contracts in the past. Contact with the deceased was established, and he left another job to operate the hammer. Smith was to pay him 40 cents per hour while he was so engaged, and retain 60 cents per hour for himself. All said parties met at the building one morning. The work to be done was indicated. It consisted of boring holes in the concrete and putting in shields. Such holes were to be located on the same plan as those already bored. They were to be about 18 inches apart in a flat surface about 9 feet wide and 36 feet long. After the nature of the work to be done was understood, Smith left and deceased remained to bore the holes. He found the drills he had brought with him were not suitable for the work to be done, and on his own initiative went to Smith's office and procured others. Scaffolding was already erected, and the firm told him he might use it in his work. It was not quite high enough, and the firm, at his request, prepared a movable stand or table for him to sit on. He indicated the kind of table he desired, and they constructed it accordingly. They showed deceased where to begin drilling the holes, and told him they wanted them like those already there. After that he did his own

measuring. He determined for himself the depth of the holes according to the shields which he carried in his pocket. There was no testimony that he was required to begin or cease work at any particular hour or hours. After he had procured what he considered proper drills, he located a light socket, connected his hammer therewith, and began the work. He worked that day and returned to work next morning. Shortly thereafter the members of the firm noticed that the noise incident to the operation of the hammer had ceased. They then went to the room in which he was working and found him lying dead on the scaffold. There is no controversy over the fact that his death resulted from an electric shock sustained while operating such hammer. Smith collected $1 an hour for the time deceased worked on the job. Plaintiff in error does not deny that the deceased was employed by Smith for the specific purpose of operating said hammer in the drilling of holes necessary to enable said firm to perform its contract; that he was selected and directed to report for service by Smith; that he was looking to Smith alone for his compensation; that Smith met with him and said firm and ascertained the exact nature and extent of the work required; that he then left the deceased to perform that work; and that the relation of employer and employee existed in a general sense between them. The specific contention is that Smith loaned or rented the deceased and the hammer he used to said firm under such circumstances as made deceased for the time being, in contemplation of law, the employee of said firm. The test prescribed for determining the issue presented by such contention is stated by the Commission of Appeals in Security Union Ins. Co. v. McLeod, 36 S.W. 2d 449, 451, pars. 3 and 4, from which we quote as follows:

"The relation of master and servant exists, where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished, but as well the means and details of its accomplishment; not only what shall be done, but how it shall be done. Shannon v. Western Indemnity Co. (Tex.Com.App.) 257 S.W. 522, 523; Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S.W. 399; Southern Surety Co. v. Shoemake (Tex.Com.App.) 24 S.W.2d 7.

"The mere right of a person who has let out a contract, to supervise the work in such a way as to see that it is performed according to contract, does not make the employees of the contractor his employees. Simonton v. Perry (Tex.Civ.App.) 62 S.W. 1090; Smith v. Humphreyville, 47 Tex.Civ. App. 140, 104 S.W. 495, writ of error refused; American Indemnity Co. v. Dinkins (Tex.Civ.App.) 211 S.W. 949, writ of error refused."

The contract between Smith and said firm, under which deceased was working at the time of his death, was verbal and rather vague in its terms. The work to be done thereunder was the subject-matter thereof, and was stated by the firm in the presence of both Smith and the deceased. Smith's assent thereto merely rendered certain the end to be accomplished. The means and methods to be used in accomplishing such end were, so far as disclosed by the testimony, left exclusively to the initiative of Smith or the deceased, except it seems to have been understood by all parties that the use of a "hammer" in that connection was appropriate. There is no testimony of any supervision by said firm of the work done by the deceased for the purpose of insuring that it conformed to the original contract or agreement, nor is there anything to indicate that any necessity for such supervision was contemplated. See, in this connection, Shannon v. Western Indemnity Co. (Tex.Com.App.) 257 S.W. 522; Traders & General Ins. Co. v. Jones (Tex.Civ. App.) 95 S.W.2d 189, 193, and authorities there cited; Carter Publications v. Davis, (Tex.Civ.App.) 68 S.W.2d 640, 642, par. 1 (writ refused) and authorities there cited; Krausse v. Decker (Tex.Civ.App.) 57 S.W. 2d 1124, 1125, par. 1.

The trial court held that the testimony raised issues of fact with reference to whether the deceased was an employee of Smith at the time of his death, or an employee of said firm. He submitted such issues to the jury for determination. There is no complaint in this appeal of the manner of such submission. The jury found that he was the employee of Smith, and that he was not an employee of said firm. The actual employer, in legal contemplation, of the deceased, was a question of fact, unless the testimony bearing on such issue was not only uncontradicted, but was also so definite and conclusive that reasonable minds could not differ as to its effect. When the ultimate fact to be ascertained is not shown by direct testimony, but is to be inferred in whole or in part from other circumstances in evidence, a jury question is presented. Wallace v. Southern

---

Cotton Oil Co., 91 Tex. 18, 40 S.W. 399, par. 3; Krausse v. Decker (Tex.Civ.App.) 57 S.W.2d 1124, 1125, pars.. 1 to 4; El Paso Laundry Co. v. Gonzales (Tex.Civ.App.) 36 S.W.2d 793, 795, par. 5; Straka v. Farmers' Mutual Protective Ass'n (Tex.Civ.App.) 79 S.W.2d 883, 885, par. 1 (writ refused) and authorities there cited; Wiggins v. Holmes (Tex.Civ.App.) 39 S.W.2d 162, 163, pars. 1 to 3, inclusive (writ refused) and authorities there cited; Independence Indemnity Co. v. Kell (Tex.Civ.App.) 58 S.W.2d 1032, par. 2; Maryland Casualty Co. v. Williams (Tex.Civ.App.) 47 S.W.2d 858, 859, pars. 1 to 3, inclusive.

We conclude that, under the record and the authorities above cited, the court did not err in refusing to peremptorily instruct a verdict in favor of plaintiff in error, and the judgment of the trial court is therefore affirmed.