### EMIL J. McMAHAN v. TEXAS & NEW ORLEANS RAILROAD COMPANY.

No. 7832. Decided March 25, 1942.
Rehearing overruled April 22, 1942.
(161 S. W., 2d Series, 71.)

*Wade & Wade* and *L. D. Stroud,* of Beeville, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that there was no evidence of sufficient probative force to support the finding by the jury that the railroad crossing involved was more than ordinarily dangerous, as a night-time crossing. Liberty Film Lines v. Porter, 146 S. W. (2d) 982; Rodriquez v. W. O. Life Ins. Co., 145 S. W. (2d) 1077; Krumb v. Porter, 152 S. W. (2d) 495.

*Crain, Vanderberge & Stafer,* of Victoria, *Dougherty & Dougherty, Maynard Porter, George Morrill,* all of Beeville, and *Baker, Botts, Andrews & Wharton,* of Houston, for defendant in error.

The crossing was not extra hazardous or dangerous, therefore defendant owed plaintiff no duty to warn him by wig wag, light or other extra warning signal, and his own statement showed that he knew that the train was being operated at and near the crossing. Beaumont, S. L. & W. Ry. Co. v. Richmond, 78 S. W. (2d) 232; Harris v. Texas & Pac. Ry. Co., 28 S. W. (2d) 1093; Wichita Valley Ry. Co. v. Fite, 78 S. W. (2d) 717.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This case was born of stark tragedy. On the night of November 16, 1935, Emil J. McMahan and his friend, Carroll Jeffrey, were on their way to a dance in an automobile driven by the latter. Suddenly, as they neared the town of Mathis, the automobile ran into a train then being operated by the defendant on a switch track across the highway. Jeffrey was dead. McMahan, unconscious, was taken to a hospital, whence he emerged weeks later a wreck of a man. Is the railroad company, by reason of the physical aspects of the crossing and because of its failure to give special warning of the train's presence thereon, liable to McMahan in damages for his injuries? Basing his judgment on jury findings the trial court said "Yes." The Court of Civil Appeals said "No." 144 S. W. (2d) 1019. The writ of error was granted on McMahan's contention that the Court of Civil Appeals should have remanded the case for a new trial instead of rendering it for the defendant.

The jury's findings were (1) that the conditions surrounding the crossing were such as to render it more than ordinarily dangerous as a nighttime crossing; (2) that defendant failed to have the crossing lighted at the time of the collision, (3) that such failure was negligence, which (4) was a proximate cause of plaintiff's injuries; (5) that defendant had no flagman with a lantern at the crossing at the time of the collision, (6) that such omission was negligence, which (7) was a proximate cause of plaintiff's injuries; (8) that defendant had no warning or signal light in operation at the crossing at the time of the collision, (9) that such failure was negligence, which (10) was a proximate cause of plaintiff's injuries.

All the authorities seem to recognize that some such precautions as those outlined in special issues Nos. 2, 5· and 8, supra, are required of a railway company when a crossing is more than ordinarily dangerous for nighttime travelers. Because a crossing is more than ordinarily dangerous more than ordinary measures must be taken to apprise one approaching it on an intersecting highway that such dangers exist. See Missouri, K. & T. Ry. Co. v. Long (Com. App.), 299 S. W., 854, and authorities there cited; same case, on second appeal, 23 S. W. (2d) 49, Civ. App. (er. ref.). These dangers obviously exist only because it is more than ordinarily difficult for one about to cross to discover that a train is likewise then using or about to use the crossing. If a highway traveler knows that a train is so using or about to use it, these extraordinary dangers do not exist and extra precautions to warn him would be futile, since the only purpose they could serve would be to warn him not to run into the train. If he knows of the proximity of a train yet runs into it, it would seem logical to assume that a light at the crossing or a flagman with a lantern or a warning light in operation or any similar measure would be ineffectual to prevent the collision since their only possible purpose would be to warn him of the train's presence. In the nature of things, they could not keep him from running into it. Therefore, the absence of such warning could not be a proximate cause of his doing so. This reasoning was applied in an analogous case, Texas & N. O. R. Co. v. Compton, 135 Texas 7, 136 S. W. (2d) 1113, wherein the crossing was not extra hazardous, but the plaintiff ran into a train thereon and claimed the defendant railway company was negligent in not having a warning sign at the crossing. It was said that "if travelers on the highway could not see the moving cars ahead of him (sic), they could not have seen the sign"; that, there-

fore, as a matter of law, absence of a warning sign was not the proximate cause of the death of plaintiff's husband. So, in the case at bar if plaintiff knew that defendant's train was using the crossing or was about to use it or if the circumstances otherwise were sufficient to warn him of such fact, negligence and proximate causation could not be predicated on defendant's failure to take other precautions to give him that identical information, although the crossing was more than ordinarily hazardous for nighttime use.

The crossing in question was made by a switch track extending from defendant's line across state highway No. 12 to the line of the S. A. U. & G., at the town of Mathis. As plaintiff and Jeffrey approached it on highway 12, the switch track was to their left and extended on to their right after it intersected said highway. Plaintiff's counsel asked him, "Did you or not see any train, engine or evidence of a train or part of a train, before you struck it?" To this plaintiff answered, "we noticed a train over on our left." Further questioned by his own counsel, plaintiff testified that they were about 100 yards from the crossing when they saw this train, that his attention was attracted to the engine because of the fire under its tender and because its headlight was "butted up against a boxcar or something"; that he then spoke to Jeffrey about it saying, "I just told him that there was a train out there and he'd better kind of watch out. I didn't know but what the train might be out on the switch" and that the speed of their automobile then "slowed up," doubtless indicating that Jeffrey understood and saw what plaintiff saw. Plaintiff further testified that he had lived at Tynan, seven miles from the scene of the collision, since he was seven years old, that the switch track had been there all the time, and that he had traveled over the road and the crossing at intervals before and had traveled it with Jeffrey prior to the night of the tragedy. Jeffrey's father testified he had lived at Tynan 13 years. Presumably, therefore, Jeffrey knew about the switch track and its location with respect to highway No. 12.

Assuming, then, that the crossing was more than ordinarily dangerous for nighttime use by travelers on the highway because of its being in a slight depression and because of the lights of the town of Mathis beyond and because of other facts, still the defendant's omissions in failing to warn of the presence of a train thereon could not be a proximate cause of plaintiff's injuries sustained in running into the train because, under

the testimony of plaintiff himself, both he and Jeffrey already otherwise knew either that it was there or that it might be there, from information they had gained a hundred yards away while driving about 25 miles an hour on a highway, which for 860 feet back from the crossing was straight, and in a car which, plaintiff said, could not run more than about 31 or 32 miles an hour.

Since there was a straight view down the road for 860 feet the fact that there was a signboard on the right side of the highway which partially obstructed the view of the switch track to the right would be immaterial, since plaintiff and Jeffrey had already seen the train, which, it later developed, was then occupying the crossing both to the right and left sides of the highway. Moreover, the signboard would be but one circumstance tending to render the crossing extra hazardous, which, as we have seen, makes no difference under the facts of the case. Nor would the amount of travel on the highway make any difference. And the same may be said as to the effect produced by the lights of the town of Mathis beyond the switch track.

We think Texas & N. O. R. Co. v. Stratton (Civ. App.), 74 S. W. (2d) 741 (er. ref.), and Texas & N. O. R. Co. v. Stratton (Civ. App.), 74 S. W. (2d) 746 (er. ref.), are fully applicable here. In the former case it is said that the "use of lights, signals and warnings is for the purpose of letting persons using the highway *know of the presence of the crossing, and that a train is approaching the highway*" (Italics ours). In the case at bar both Jeffrey and plaintiff knew about the crossing and knew that a train was at least within about 100 yards of it. And plaintiff testified that he "didn't know but what the train might be out on the switch." Furthermore, the fact that the headlights of the engine, as he said, "was butted up against a boxcar or something" was fairly indicative that the engine might then be engaged in switching operations. See Harris et al v. Texas & P. Ry. Co. (Civ. App.), 28 S. W. (2d), 1093 (er. ref.).

We think the authorities relied upon by the plaintiff are clearly distinguishable. For example, in Missouri, K. & T. Co. v. Long, supra, there was no evidence that Long or any of his fellow passengers had any knowledge of the proximity of any train before they collided with it. The same is true in Gulf, C. & S. F. Ry. Co. v. Picard (Civ. App.), 147 S. W. (2d) 303

(er. dism.). In Beaumont, S. L. & W. R. Co. v. Richmond (Civ. App.), 78 S. W. (2d) 232 (er. dism.), the plaintiff testified that he saw no lights either on the caboose or between the engine and the caboose, and there was no evidence that he saw the train at all. In St. Louis, B. & M. Ry. Co. v. Brack et al (Civ. App.), 102 S. W. (2d) 261, the deceased ran into a portion of the train unnecessarily left across the highway while the train operatives switched with the other portion, and the circumstantial evidence rather conclusively showed that deceased never knew of the train's presence across the highway. We are painfully conscious of the tragic circumstances attending this case but we cannot extend to it the principles of the *Long, Richmond, Brack, Picard* and like cases because they are clearly not applicable.

Our conclusion is based on what the plaintiff himself testified. We must assume, therefore, that the record would be no different in that regard were a new trial ordered. We think that brings this case squarely within the rule announced in Winiger v. Ft. Worth & D. C. Ry. Co., 105 Texas 56, 143 S. W. 1150, Williams & Stephens v. Belo (Com. App.), 41 S. W. (2d) 22, and other cases, stating when it is proper for the Court of Civil Appeals to render a judgment. Although a new trial were ordered it would still be true that the alleged omissions of the defendant could not, as a matter of law, be a proximate cause of the collision in question; therefore, this essential element of actionable negligence would still be wanting. See 38 Am. Jur., sec. 351, p. 1059.

It follows from what we have said that we agree with the conclusions reached by the Court of Civil Appeals. Hence, its judgment reversing the judgment of the trial court and rendering the same for the defendant is affirmed.

Opinion adopted by the Supreme Court March 25, 1942.

Rehearing overruled April 22, 1942.