## TEXAS & N. O. R. CO. v. BURDEN.

### No. 4339.

Court of Civil Appeals of Texas. Beaumont.

June 27, 1946.

Rehearing Denied Sept. 18, 1946.

Woodul, Arterbury & Folk, of Houston, for appellant.

Campbell & Foreman, of Livingston, and Collins, Dies, Williams & Garrison, of Lufkin, for appellee.

MURRAY, Justice.

This is an appeal from a judgment in the district court of Angelina county against Texas & New Orleans Railroad Company, appellant, in favor of Mrs. Nellie Burden, appellee, for the death of her husband, E. P. Burden.

Mr. Burden was killed by a passenger train of the appellant at a grade crossing near Diboll while attempting to walk across the main line track of appellant at a point opposite a store operated by Mr. Burden. The railroad tracks of the appellant at that point consisted of the main line and a siding on the east side of the main line. Both tracks ran approximately north and south. A freight train had pulled upon the siding to await the coming of the passenger train coming south from Lufkin toward Diboll. A small road crossed the tracks opposite the store of Mr. Burden, which crossing was about 2000 feet north of Diboll. The cut in the freight train was made at the crossing, with the engine and 11 cars north of the crossing and the rear

portion of the freight train south of the crossing. The forward or north car of the rear portion of the freight train, the one just south of the crossing, was what is known as an "immigrant" car, which was loaded with farm implements, several horses, some cows, hogs and chickens. In the car with the stock was the owner or shipper, O. W. Patton, who testified on the trial of the case. A few minutes after the freight train arrived and the operatives of the train had made the cut at the crossing, the deceased, Mr. E. P. Burden, left his store near the scene of the accident and walked over across the main line track, and across the passing track or side track, and went around to the east side of the immigrant car and engaged Mr. Patton in conversation. The rear brakeman of the freight train stood at the crossing as a flagman, or watchman there. He stopped traffic on the small road which crossed the tracks and one truck was stopped west of the crossing and a car was stopped east of the crossing, awaiting the arrival of the passenger train from the north. Mr. Burden terminated his conversation with the occupant of the immigrant car, Patton, walked into the crossing between the two freight cars at a moment when the passenger train of the appellant was very near the crossing. There is some confusion in the testimony as to exactly what transpired the few moments immediately before Mr. Burden was killed, but it is unquestioned that after the flagman yelled at him as he was crossing the side track he hesitated momentarily and stepped on to the main line track directly in the path of the passenger train, was struck by the engine on the left side of its pilot beam and was killed. The operatives of the freight train, immediately after the passenger train had passed, pulled out of the siding and on the main line and backed the train south toward Diboll, stopping at the scene of the accident.

The appellee brought suit against the appellant, alleging that the death of her husband was proximately caused by the negligent acts of the operatives of its passenger train, which were alleged to be: (1) Excessive speed of the train; (2) failure to sound the whistle of the train; and (3) failure to ring the bell; and further alleged negligence on the part of the crew of the freight train in leaving the last box car on the front portion of the train too near the crossing, so that it obscured the view of the deceased of the approaching passenger train, and further alleged that such negligence was a proximate cause of his death. She further alleged that the fireman of the passenger train saw and discovered the deceased on the track in front of the passenger train in time to have avoided killing him, and alleged other facts which invoked the doctrine of discovered peril.

Appellant answered with a special exception to a portion of the pleading, and general denial, allegations as to the manner in which deceased met his death which amounted to a special denial that the operatives of its train were guilty of any negligence or that any act of theirs proximately caused the death of Mr. Burden; and it further alleged that the deceased was killed as the direct and proximate result of his own negligence in: (a) Failing to keep a proper lookout for the coming train before entering upon the track; (b) carelessly and negligently attempting to cross the track in front of an approaching passenger train when it was so close as to hit him before he could get across; (c) deliberately jumping into the middle of the main track in front of an approaching passenger train; (d) failing to heed the warning of the watchman at the crossing; (e) failing to wait for the passenger train to pass before attempting to cross the track; and (f) entering the main line track without assuring himself he had time to get across. Appellant further specially denied that the operatives of the passenger train, either the engineer or the fireman, discovered deceased on the track before the train struck him, and further denied all the allegations as to the facts which were alleged by the appellee upon the question of discovered peril.

The case was submitted on special issues to a jury, and by its verdict the jury found: (1) That the passenger train was being operated at a greater rate of speed than a person of ordinary prudence in the exercise of ordinary care would have op-

erated the same under the same or similar circumstances; (2) that such operation at such a rate of speed was a proximate cause of the death of the deceased; (3) that the engineer and fireman of said train failed to blow the whistle when said locomotive was at least 80 rods away from the crossing; (4) that such failure to blow the whistle was a proximate cause of the death of Mr. Burden; (5) that the operatives of the passenger train failed to begin ringing the bell when the locomotive of such train was at least 80 rods away from the crossing and failed to ring continuously such bell until the locomotive passed over the crossing; (6) that such failure to ring the bell was a proximate cause of the death of Mr. Burden; (7) that the south end of the string of freight cars on the sidetrack north of the crossing was immediately at the north edge of the crossing; (8) that the leaving of such string of cars immediately at the north edge of the crossing was negligence; (9) that such negligence was a proximate cause of the death of Mr. Burden; (10) that the fireman of the passenger train saw deceased walking on to the main line track as the train approached the crossing; (11) that the fireman failed to signal the engineer to stop or reduce the speed of the train after so discovering the deceased; (12) that such failure was negligence on the part of the fireman; (13) that such negligence was a proximate cause of the death of Mr. Burden; (14) as the passenger train neared the crossing, Mr. Burden was in a situation of imminent peril of being struck by the train; (15) that the fireman on the locomotive of the passenger train discovered Mr. Burden in such situation of imminent peril and realized such peril at such a time that he and the engineer could, by exercising ordinary care in the use of the means then at their command, such as the throttle, the whistle, the bell, and the brakes on said locomotive, with safety to the train, the crew, and passengers, have avoided striking the deceased; (16) that after such discovery and realization of deceased's peril, the persons operating such locomotive failed to exercise ordinary care in making use of such means then at their hands to warn the deceased, or to slow down the speed of such train; (17) that such failure was negligence; (18) that such negligence was a proximate cause of the death of Mr. Burden; (19) that $17,950 in cash was a fair compensation to the appellee for the damages she suffered as the direct and proximate result of the death of Mr. Burden; (20) that the deceased did not fail to keep a proper lookout for the oncoming passenger train before going on the track in front of the said train; (21) that the deceased was not negligent in attempting to cross the track in front of the passenger train; (22) that the deceased did not deliberately jump in the middle of the main line track directly in front of an approaching passenger train; (23) that the brakeman did not warn the deceased not to go on the main line track in front of the approaching train; (24) that the failure of the deceased to wait a brief minute or two to allow the passenger train to pass before attempting to cross was not negligence; and (25) that the deceased was not negligent in entering upon the main line track without assuring himself that he would have time to get across before being struck by the train.

At the conclusion of the evidence, and after both sides had rested, appellant moved the court for an instructed verdict in its favor, which motion was overruled.

The court entered judgment for the appellee on the verdict of the jury, and after its motion for a new trial was overruled the appellant duly perfected its appeal to this court for review.

The appellant's first point is as follows: "Since the deceased knew the train was coming, heard its whistle, made mention of its approach, and saw it looming in front of him just before he attempted to step on the track, neither the speed of the train, nor the alleged failure of the engineer to sound the whistle and to ring the bell could have been the proximate cause of the death of the deceased; and issues in such regard should not have been submitted to the jury." Its second point is as follows: "The fact that the deceased knew of the train's approach, had heard its whistle and saw it before he stepped or jumped on the track immediately in

front of the engine, rendered immaterial the fact that box cars were so located on the sidetrack that they might have (but did not) keep the deceased from seeing the train." These points are presented jointly in appellant's brief and we will so discuss them here. The appellant contends under these points that the facts and circumstances surrounding the accident show conclusively that Mr. Burden's death was not proximately caused by the acts of negligence alleged by the appellee. It points out that the deceased had lived and operated his store beside the appellant's railroad track, and within 100 feet of the crossing, for seven years prior to his death; that he was thoroughly familiar with the procedure that called for freight trains waiting on the passenger track for a passenger train to pass to have a cut in the freight train to be made for the crossing; that he had known of and was familiar with the schedule of No. 25, the late afternoon passenger train; that he knew on the occasion in question that the freight train was waiting for No. 25. It says that if the deceased knew of the approach of the train, was warned by the flagman of its approach, could see it, and actually did see it approaching the crossing just as he was about to walk toward the track in front of it, then it became wholly immaterial that the train was going at any given rate of speed, that the whistle was or was not blown, that the bell was or was not rung, and that the string of cars was within one foot of the crossing or within 100 feet of the crossing. It argues that the facts conclusively show that the deceased jumped on the track in front of a fast moving train, when it was right on him, knowing it was right on him, and that he did this despite the warning of the brakeman who not only waved his arms to stop him but also yelled at him to stop. It argues that he could have stopped short of the track just as easily with the train coming 60 miles per hour as he could with it coming 30 miles per hour, and that it was so close to him when he did jump that it would have hit him whether it was coming 30 miles per hour or 60 miles per hour.

█ The appellant's first and second points are overruled. If, as contended by appellant, the evidence conclusively established that the deceased knew the train was coming, heard its whistle, made mention of its approach and saw it looming before him just before he attempted to step on the track, its proposition of law might be correct and the authorities cited by it in support of its contention might apply. In its brief, it relies upon and quotes from the following authorities: Texas & Pacific Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049; Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Tex. 344; McDonald v. International & G. N. Ry. Co., 86 Tex. 1, 22 S.W. 939, 40 Am.St.Rep. 803; San Antonio & A. P. Ry. Co. v. Gray, 95 Tex. 424, 428, 67 S.W. 763; McMahan v. Texas & N. O. R. Co., 138 Tex. 626, 161 S.W.2d 70. In the present case, however, the testimony of the witnesses does not conclusively establish the premises of appellant's two points under discussion. There is testimony in the record by the witness Patton, the man who was in the immigrant car with the stock at the crossing, that Mr. Burden talked to him for a few minutes before the arrival of the passenger train, that Mr. Burden heard the whistle of the passenger train and made the remark, "That is 25 coming. I believe I will be going." On the other hand the witness Leonard, who was standing outside the immigrant car near Mr. Burden, did not mention in his testimony that he heard such a statement by Mr. Burden before he left the car. The several witnesses for both parties testified differently as to the location of the freight cars on the siding with reference to the road; some said the immigrant car was 7 feet from the crossing, others 10 or 15 feet. The testimony of the various witnesses also differed as to the distance from the crossing the other freight car was left standing north of the crossing. The witness Mrs. Richardson testified that she lived on the same side of the railroad track as Burden's store, the west side, and at the time of the accident was sitting on her porch. In addition to testifying as to the speed of the passenger train and that the whistle was not blown at the crossing, and that the bell was not ringing, she testified that just before Mr. Burden was hit she heard a noise from the freight train "like

when they go to couple up; about the time it made the noise the passenger train came by and hit him." The witnesses also differ in their testimony as to the exact location in the crossing space of the brakeman acting as a flagman, the testimony of some witnesses placing him to the south and east of the center of the main line track in position where any audible warning by him to Mr. Burden could have served to detract Mr. Burden's attention away from the direction of the approaching passenger train. We believe that there was presented in this case sufficient conflict in the testimony and contradiction in the testimony of certain witnesses to warrant the submission to the jury of the issues involving negligence and proximate cause, as was done by the court. In addition, the existence of some of the ultimate facts of negligence and proximate cause was not shown by direct testimony but it had to be inferred in whole or in part from the circumstances in evidence. 41 Tex.Jur. 1026; Southern Underwriters v. Willis, Tex.Civ.App., 110 S.W.2d 252; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139; International & G. N. R. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506; Jones v. Louisiana Western R. Co., Tex. Com.App., 243 S.W. 976.

The appellant's third point is that the conduct of the deceased in stepping on the track immediately in front of the on-coming train, knowing of its approach, and seeing it almost on him as he jumped, and in failing to heed the warning of the brakeman who was stationed at the crossing for the purpose of giving such warning, convicted him of negligence proximately causing his death. Appellant cites and quotes from many cases holding certain conduct of injured and deceased persons to be contributory negligence, including Sabine & E. T. Railway Co. v. Dean, 76 Tex. 73, 13 S.W. 45; Bennett v. St. Louis Southwestern Ry. Co., 36 Tex.Civ.App. 459, 82 S.W. 333; Galveston, H. & S. A: Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524; Hughes v. Galveston, H. & S. A. Ry. Co., 67 Tex. 595, 4 S.W. 219. In support of this point, appellant again assumes in its argument that the testimony conclusively showed that Mr. Burden, the deceased,

knew the train was coming, heard its whistle, and saw it before he stepped on the track in front of the train. We do not believe that the evidence conclusively establishes these facts. The testimony discussed above under points 1 and 2 tended to show to the jury that the freight train was making some noise, as if it were coupling up, and that Mr. Burden's attention was diverted by it and by the warning words spoken by the flagman. As pointed out in the opinion in Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139, the possibility that some incident immediately before the deceased stepped upon the track might have momentarily diverted his attention is a circumstance to be appraised by the jury. There remained for the jury the question whether under all the facts and circumstances, including such distraction of attention, a reasonably prudent person in Mr. Burden's situation would or would not have done substantially as he did. We believe these questions were for the jury to determine, and the court did not err in submitting to the jury the issues involving contributory negligence. See Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139, and cases cited therein.

The appellant's fourth point is that "the testimony overwhelmingly and unmistakably shows that the operatives of the appellant's train could not possibly have seen the deceased, if at all, before the fast moving train was within 50 or 60 feet of the spot from which the deceased jumped or leaped in front of the locomotive. It follows that issues embracing the doctrine of discovered peril should not have been submitted to the jury." From the testimony in regard to the physical situation existing at the time of the fatal accident, we think it is established conclusively that the sidetrack and the main line track there were very close together; that the total distance from the east rail of the siding to the east rail of the main line track was 11 feet 10 inches; that between the inside west side wall of a box car on the siding and the pilot beam of the locomotive passing line, was two feet, or less, probably 22 inches; that when Mr. Burden started from the immigrant car he walked around the car, turned to his left, crossed the side track

and stepped on to the passenger track or main line without stopping, except that he might have hesitated momentarily after the warning by the flagman before stepping upon the passenger track. The fireman on the passenger train testified that he saw Mr. Burden walking across the passenger track in front of him when the passenger train was 10 or 12 car lengths away; that he watched him until he got out of his sight on the right side of the track. It seems improbable from all the testimony that the man the fireman saw was Mr. Burden. Without discussion of that probability, however, whether the fireman saw him or not, we think the testimony is insufficient to show that the fireman discovered Mr. Burden in time to have stopped or slowed down his train, or to have given sufficient warning to have prevented striking and killing Mr. Burden. Many cases in Texas are authority for the rule that the crucial issue in discovered peril cases is whether the perilous position of the injured party was discovered in time to avoid the injury by the use of all means at hand. One of the most recent opinions in that regard is Texas & N. O. R. Co. v. Daisy Grace, Tex.Sup., 188 S.W.2d 378. The same expression is found in Airline Motor Coaches v. Parks, Tex.Civ.App., 190 S.W. 2d 142, affirmed, Tex.Sup., 193 S.W.2d 967. The testimony of the persons who were near the scene of the collision, including Mr. Tatum, a witness for the appellee, is to the effect that only a very few seconds of time elapsed from the time Mr. Burden turned to his left and went across the siding and on to the passenger track. The testimony as a whole was not sufficient to show that the fireman on the passenger train discovered him in time to have caused the train to be stopped or slowed or to have given sufficient warning to prevent it striking Mr. Burden. We are not unmindful of the rule announced in the recent case of

Texas & N. O. R. Co. v. Krasoff, 191 S.W. 2d 1, 3, by the Supreme Court, in which it is stated that in cases involving the doctrine of discovered peril the "use of means at his command by a train operative is not necessarily restricted to stopping or slowing a train to avoid striking the party in peril. It may include as well the giving of an alarm by bell or whistle so that the one in peril may have an opportunity to extricate himself. That principle is based on the fact that the injured party's peril may be discovered when it may be too late to save him by stopping or slowing the train but the tragedy may be averted by giving a warning." We believe that the testimony here was insufficient to warrant the submission of the issues involving the doctrine of discovered peril. In view however of the findings of the jury in regard to the primary negligence of the appellant, proximate cause, to lack of contributory negligence on the part of appellee, no reversible error is presented by the submission of the issues involving the issues of discovered peril.

Appellant's fifth point is simply a resume of its other four points taken together and maintains that since no primary negligence was shown on the part of the appellant which could have been a proximate cause of the accident, and since the conduct of the deceased convicted him of negligence causing his own death, since the facts preclude the application of the doctrine of discovered peril, the court should have instructed a verdict in its favor. Since we have concluded that the testimony was sufficient to warrant the submission of the issues and to support the findings of the jury in regard to negligence and proximate cause and in regard to contributory negligence of deceased, we find no merit in this point and it is overruled.

No reversible error appearing, judgment of the trial court is affirmed.