**TEXAS & N. O. R. CO. v. McMAHAN.**

No. 10730.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 21, 1940.

Rehearing Denied Nov. 27, 1940.

Crain, Vandenberge & Stofer, of Victoria, Dougherty & Dougherty, Maynard Porter, and George Morrill, all of Beeville, and Baker, Botts, Andrews & Wharton, of Houston, for appellant.

Wade & Wade and L. D. Stroud, all of Beeville, for appellee.

MURRAY, Justice.

This suit was instituted by Emil J. McMahan, appellee, against Texas & New Orleans Railroad Company seeking to recover damages for personal injuries growing out of a collision between an automobile that was being driven by one Carroll Jeffrey, in which appellee was riding, and a box car being pulled by appellant Railroad Company slowly across a paved state highway, known as State Highway No. 12, which leads from the town of Skidmore to Mathis. The collision occurred near the town of Mathis, an unincorporated town of about 1,200 inhabitants, on Saturday, November 16, 1935, at about 10 o'clock p. m.

The trial was to a jury which found, among other things, that the Railroad Company was guilty of negligence proximately causing Emil J. McMahan's injuries, in that the crossing at which the collision occurred was more than ordinarily dangerous as a

night-time crossing, and the Company failed to have the crossing lighted, failed to have a flagman with a lantern stationed at the crossing, and failed to have a warning signal or light in operation at the crossing.

In accordance with the verdict of the jury, judgment was entered in favor of McMahan against the Railroad Company in the sum of $9,627, from which judgment the Texas & New Orleans Railroad Company has prosecuted this appeal.

It is clear that the judgment is based upon the failure of the appellant to use extraordinary means of giving notice of trains, required of railroads at grade crossings which are unusually dangerous or extra hazardous, and unless the evidence is sufficient to support the jury finding that the crossing where the collision occurred was an extra hazardous or unusually dangerous night-time crossing, the judgment cannot stand.

The facts and circumstances relied upon to show that the crossing was more than ordinarily dangerous as a night-time crossing are as follows:

"(1) The crossing was over a main arterial highway and was much used by traffic.

"(2) The railroad track intersects said crossing at an acute angle.

"(3) The view of said crossing was obstructed by a large signboard.

"(4) The railroad company was carrying on switching operations, and the headlight of its locomotive was butted against a box car and slowly backing parallel to the highway, far removed from the crossing.

"(5) Flat cars were covering the crossing as appellee approached, and because of the low-type flat cars and the lights of the town of Mathis beyond the crossing, appellee and the driver of the car were led to believe that the crossing was unobstructed.

"(6) The track at the crossing was in a depression, and the lights beyond the crossing in the town of Mathis created an illusion that the track was unobstructed."

The fact that there was a great deal of traffic over this crossing would have only a slight bearing upon whether or not the crossing should be regarded as extra hazardous.

Likewise, the fact that the railroad track crossed the highway at an acute angle is of very little importance, since appellee was familiar with this situation. A train crossing a highway at an acute angle is probably as easily seen as one crossing at a right angle.

The next contention is that the crossing was obstructed by a large signboard. This signboard was some seventy-five feet north of the crossing and in the direction from which appellee was approaching the crossing. It was on the northwest or right-hand side of the highway as appellee approached Mathis coming from Skidmore. The highway was some sixty feet wide and the sign set back from the highway some five or ten feet. The particular train which was struck consisted of an engine and several cars, which were to the southwest or appellee's left-hand side of the highway, and this side was unobstructed. In fact, appellee admitted that he saw the train when he was some distance from the crossing and warned Carroll Jeffrey, the driver of the car in which he was riding, that he had better "watch out." The crossing was in or near the town of Mathis and the driver should have been slowing down to twenty miles per hour as he approached the crossing. Under these circumstances a signboard seventy-five feet from the crossing and setting back some thirty-five feet from the center of the road would not be sufficient to render the crossing extra hazardous.

The fact that the headlight of the engine was turned in the direction of a box car, rather than to the front, could have but little bearing on the nature of the crossing, and especially when appellee testified that he did see the engine and noticed that the headlight butted against a box car and thought that the train might be near or on the crossing. Both appellee and Carroll Jeffrey lived for many years at Tynan, only seven miles northeast of Mathis, and both were thoroughly familiar with the crossing and all of the surrounding conditions, having traveled over the highway many times.

The fifth and sixth contentions are closely related and will be discussed together. Together they present the contention that the crossing, being in a depression, only flat cars being across the highway as appellee approached and due to the lights across the track and in the town of Mathis caused it to appear that the highway was unobstructed. The record shows that the highway was straight, almost level for more than eight hundred feet either to the north or the south of the crossing, was wide and unobstructed, except for the signboard above discussed. There was a statutory crossing sign at the crossing and an automatic illuminating highway sign showing red at the side of the highway 250 feet from the crossing on the side from which appellee was approaching.

In view of the fact that appellee actually saw the train and called it to the attention of Jeffrey, and that each was very familiar with the crossing and its surroundings, having passed over it many times, and in view of the wide, open, straight and almost level highway upon which appellee was traveling at the time of the collision, we cannot permit this judgment to stand, based upon the alleged negligence of the Railroad Company in not having extraordinary methods of warning appellee and the driver of the car, Carroll Jeffrey, of the presence of the train upon the crossing. Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741; Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 746; Texas & N. O. R. Co. v. Berry, Tex.Civ.App., 74 S.W.2d 750; Texas & N. O. R. Co. v. Compton, Tex.Sup., 136 S.W.2d 1113.

The case having been fully developed, and the evidence being insufficient to support the finding by the jury that the crossing in question was a more than ordinarily dangerous crossing, under all the circumstances, the judgment will be reversed and judgment here rendered that appellee take nothing and pay all costs.

Reversed and rendered.