AMERICAN SURETY COMPANY, Appellant,

v.

Paul M. McCARTY, Appellee.

No. 11332.

Court of Civil Appeals of Texas.

Austin.

Oct. 27, 1965.

Rehearing Denied Nov. 17, 1965.

This lawsuit was brought by appellee McCarty against the appellant Insurance Company by virtue of the Company's refusal to pay a judgment granted appellant against one of the Company's assureds, Doris Purser. The facts in the suit that resulted in the judgment are reported in this Court's opinion styled McCarty v. Purser, 373 S.W.2d 293 and also in an opinion by the Supreme Court in 379 S.W. 2d 291.

Trial was to the court and judgment was for appellee against the Company for $5000.-00.

We affirm the judgment of the trial court.

To recapitulate, briefly, the facts referred to in the opinions cited above, appellant was struck and injured by a U. S. Air Force pickup truck driven by a civilian Doris Purser who was accompanied in the truck at the time of the accident by a Lt. Col. Jewell to whom the pickup had been assigned by the Air Force. Those involved in this accident had been attending a party at the Officer's Club on Bergstrom Air Force Base.

### I.

Appellant is before us with five points of error the first two being briefed together, namely, the error of the court in holding that Doris Purser had the permission of the United States Government, which owned the Air Force pickup, to drive it, since Lt. Col. Jewell who supposedly gave such per-

Coleman Gay, Austin, for appellant.

Byrd, Davis & Eisenberg, Tom H. Davis, Marion S. Roberts, Jr., Austin, for appellee.

PHILLIPS, Justice.

1. The pertinent parts of 5 U.S.C.A., Sec. 78(c) (2) are as follows:

"[Sec. 78(c) (2), 5 U.S.C.A., a limitation on appropriation of government funds.]

(c) Unless otherwise specifically provided, no appropriation available for any department shall be expended—* * *

(2) for the maintenance, operation, and repair of any Government-owned passenger motor vehicle or aircraft not used exclusively for official purposes; and 'official purposes' shall not include the transportation of officers and employees between their domiciles and places of employment, * * * except in cases of officers and employees engaged in field

work the character of whose duties makes such transportation necessary and then only as to such latter cases when the same is approved by the head of the department concerned. Any officer or employee of the Government who willfully uses or authorizes the use of any Government-owned passenger motor vehicle * * *, for other than official purposes or otherwise violates the provisions of this paragraph shall be suspended from duty by the head of the department concerned, without compensation, for not less than one month, and shall be suspended for a longer period or summarily removed from office if circumstances warrant. * * * *"

mission was forbidden by 5 United States Code Annotated, Section 78(c) (2) [1] from so doing and, secondly, the error of the court in holding that appellant was liable for the judgment recovered by appellee against Doris Purser since under its policy there was no insurance coverage in her favor on a non-owned vehicle unless it was being used with the owner's consent, and Lt. Col. Jewell, who purported to give her permission to drive it, was forbidden by law to do so.

We overrule these points.

■ The facts of this case present a novel situation to this Court and we are without the guidance of prior authority. Appellant strongly urges the decision of the Amarillo Court in Globe Indemnity Co. v. French, Tex.Civ.App., 382 S.W.2d 771, writ ref., n. r. e., as being the nearest authority in point. We do not believe that French is decisive here as there the driver of the car had no permission from the owner to drive the car and the Court correctly held the facts would not justify any implied permission.

Here we have a different situation. Lt. Col. Jewell was an officer in the Air Force and at the time of the accident was a Bomb Squadron Commander in the Strategic Air Command. As such, he had a Ford pickup specially equipped with a radio by which he could communicate with the base tower, command post and aircraft in the traffic pattern. This pickup was assigned to him on a 24-hour basis. He testified that he was responsible for the car and that it was he who determined who drove it. That he had the same control over the pickup as he would have had over his own private vehicle.

The evidence indicates that when Lt. Col. Jewell allowed Mrs. Purser to drive the pickup, they were proceeding to Mrs. Purser's car that was parked nearby and that then Lt. Col. Jewell would have been on his way home. Mrs. Purser was driving the pickup under his supervision and direction. During the trip Lt. Col. Jewell was in the right front seat of the pickup and assisted Mrs. Purser in putting the vehicle in gear and immediately before the collision attempted to turn the vehicle and put on the brakes. During the course of the ride, he had directed Mrs. Purser where to drive and after the collision he stopped the engine of the pickup.

Mrs. Purser testified that she assumed that Lt. Col. Jewell had a right to say who drove the pickup and how they drove; that in the course of driving she would have obeyed any instructions or directions given by the Colonel.

There is no doubt but that the Government owned the pickup in that it had title to it. There is doubt however as to whether the provisions of the U.S.C.A. quoted above, would conclusively bar Lt. Col. Jewell from using the pickup as he did, however, we do not believe that this point is controlling nor do we base our decision thereon.

Col. Jewell, as a Bomb Squadron Commander using a car officially assigned to him on a SAC Base, was an arm of the government and certainly had the actual or real authority in fact to use the car as he did. Under these circumstances Mrs. Purser had no reason to believe that his authority was otherwise. Appellant is not before us in any better position than she.

This is not the usual omnibus clause case where the driver of a vehicle acts at her peril as to the provisions of the owner's insurance policy but is a case where the assured has the right to believe that she is covered by her own policy of insurance.

Appellant in urging the above quoted portion of U.S.C.A. as being determinative of whether Mrs. Purser was driving with the owner's permission cites a case [2] where

2. Texas Employers Insurance Association v. Doss, Tex.Civ.App., 301 S.W.2d 473, writ ref., n r e.

a workmen's compensation claimant was presumed to know the law; a case [3] where a receiver is charged with the knowledge of his authority and a case [4] where members of the bar are presumed to know the law, however we do not believe that these are in point here. There the law itself is directed toward those charged with its knowledge, while in the case at bar, the law quoted is directed to the conduct of official government personnel with resepect to government vehicles and not to innocent third parties.

II.

Appellant's third and fourth points of error briefed together are the error of the court in permitting the appellee to introduce the crucial testimony of Col. Jewell given in a related case to which appellant was not a party by attaching a transcript of such former testimony to written interrogatories and asking him if he would still make the same answers if those questions were again asked him; and, the error of the court in overruling appellant's objections to the crucial testimony of Col. Jewell given at the trial of a related case in response to leading questions by appellee's counsel.

We overrule these points.

Upon the trial of this case appellee sought to utilize certain testimony given by Col. Jewell at the trial of the personal injury suit in which Col. Jewell and Doris Purser were defendants. He accomplished this by having Col. Jewell testify by deposition that if the same questions were again asked him he would give the same answers.

The testimony in question related to his authority to let Doris Purser drive the Air Force pickup. This question was not involved in the personal injury suit but on cross-examination by a series of leading questions appellee secured testimony from

Col. Jewell to the effect that he had the same control over the pickup that he had over his private vehicle. The leading questions in the personal injury suit were not objectionable on the ground that Col. Jewell was an adverse party.

In order to use the former testimony in the suit at bar appellee propounded the following written interrogatories to Col. Jewell:

"Q   Attached hereto as Exhibit A is a copy of some of your testimony in Cause No. 11,932. Was such testimony true when you gave it?

A   Yes.

Q   Is such testimony still true?

A   Yes.

Q   Assuming that the identical questions contained in Exhibit A were asked you right now, would your answers be the same?

A   Yes."

Appellant duly filed written objections to each of the interrogatories above quoted on the grounds that each of them was leading in suggesting the manner in which the individual questions should be answered and that such method of examining a witness is wholly improper since the questions should be asked separately in order that opposing counsel would have the opportunity to object to each question before it was answered. Appellant also pointed out that such method would be proper only for impeachment purposes and that apparently appellee anticipated either that if he asked the questions he would get less favorable answers or he desired to show the witness that he could be impeached by his former testimony if he tried to testify differently. All objections were overruled.

3.  Baumgarten v. Frost, 143 Tex. 533, 186 S.W.2d 982, 159 A.L.R. 428.

4.  E. H. Stafford Mfg. Co. v. Wichita School Supply Co., 118 Tex. 650, 23 S.W. 2d 695.

 The following questions and answers summarize the Colonel's testimony in the personal injury suit on this point:

"Q What it boils down to, while it was assigned to you, you had the same control over it as you would over your own private vehicle, didn't you?

A Usually yes.

Q On this occasion you did, didn't you? You had the same say-so and same control over the pickup as you would have over your own private vehicle, didn't you?

A Yes, sir."

These were leading questions, however this case was not tried to a jury but to the court. In such a situation it is generally within the trial court's discretion whether to allow leading questions and there is no abuse of any discretion here. See Nieto v. United States National Bank of Galveston, Tex.Civ.App., 384 S.W.2d 395, writ ref., n. r. e. Moreover, appellant has failed to show that any error in connection with the court's allowing of the questions was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

### III.

 Appellant's fifth point of error is that of the court in refusing to permit Sgt. William L. Grimes, a witness for appellant, to testify that at the time of the accident involved in this case all Air Force vehicles carried on the instrument panel a prominent decalcomania sticker with the heading "PENALTY FOR UNAUTHORIZED USE OF MOTOR VEHICLES" under which was a quotation of the statute forbidding such use.

We overrule this point.

Appellee objected to this testimony as it involved Air Force regulations, the best evidence of which was the regulations themselves. The regulations were never offered into evidence.

Sgt. Grimes testified that he was not at Bergstrom Air Force Base when the accident in question occurred, therefore he could not have had any personal knowledge as to whether or not the particular pickup in question actually had a decal on its dashboard at the time. Appellee's objection was properly sustained.

We affirm the judgment of the trial court.

ARCHER, C. J., not participating.