SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, Appellant,

v.

Carlos PERALEZ, Appellee.

No. 1087.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 31, 1976.

Rehearing Denied Jan. 26, 1977.

Ralph L. Alexander, Kelley, Looney & Alexander, Edinburg, for appellant.

Henrichson & Smith, Edinburg, for appellee.

## OPINION

YOUNG, Justice.

In this train-automobile collision case, Southern Pacific Transportation Company, defendant below, appeals from a $322,-650.00 judgment against it and in favor of Carlos Peralez, plaintiff below, for plaintiff's property damage and personal injuries. The plaintiff had alleged that several acts of negligence by the defendant proximately caused the collision in question and the resulting damages to the plaintiff.

The parties tried the case before a jury which found that the collision was proximately caused by the negligence of Southern Pacific in the following respects: (1 through 5) maintenance of an extra-hazardous crossing without adequate warnings; (8 and 9) failure to ring the train's bell continuously from a distance of at least 1,320 feet from the crossing; (10 through 12) failure to sound the train's whistle continuously from a distance of at least 1,320 feet from the crossing; (13 and 14) traveling at an excessive rate of speed; (15 and 16) failure to keep a proper lookout; (17 and 18) failure to apply the brakes properly; (19 and 20) failure to give a proper warning of the train's approach; (21 and 22) failure to maintain the crossing in proper condition; (33 and 34) failure to use ordinary care after the discovery of plaintiff's peril. The

jury refused to find that the collision was proximately caused by any negligence of the plaintiff. The total damage award (including the stipulation of $5,650.00) was $322,650.00. Based upon the stipulation and the jury verdict, the trial court entered judgment in favor of Peralez and against Southern Pacific in the amount of $322,-650.00. Southern Pacific appeals from that judgment.

A fair summary of the background facts shows these events and circumstances. On November 18, 1969, the date of the accident, at approximately 8:30 A.M., Peralez was driving his automobile north on Sugar Road approaching Edinburg, Hidalgo County, Texas, at a speed of approximately 50 miles per hour. At the same time, the Southern Pacific train was approaching from the northeast toward its crossing with Sugar Road at a speed of between 25 and 35 miles per hour. After both the engineer of the train and Peralez had applied their brakes, the train and the automobile nevertheless reached the intersection simultaneously and collided, causing the property damage and personal injuries of which Peralez complains. The impact was between the right front of the automobile and the left front of the engine of the train.

At that time, Sugar Road was a two lane, black topped county road without either center line markings or railroad crossing markings. The only sign indicating a railroad crossing was a crossbuck sign which was located off the east shoulder of the road in line with several utility poles. The Southern Pacific tracks cross Sugar Road at an angle of approximately 45°, measuring from the north. The crossing was within the city limits of Edinburg. At the crossing the track was flat and level with the road and there was no grade to indicate the crossing. The railroad bed, however, is elevated above the surrounding land which was flat and on which there were no obstructions blocking the view to the south of the track. Sugar Road, as it approaches the crossing, is level and straight for more than 1,700 feet.

█ Appellant has brought forward 24 points of error. Among appellant's points of error are several legal insufficiency points ("no evidence" and "as a matter of law"). With each such point, we shall view the evidence in a light most favorable in support of the jury findings and consider only the evidence and inferences which support the findings and reject the evidence and inferences contrary to the findings. *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.Sup.1975). In considering the appellant's factual insufficiency points of error ("insufficient evidence" and "against the great weight and preponderance of the evidence"), we shall examine the whole record to determine whether the evidence supports the jury findings. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

We have grouped for discussion appellant's points 9, 10, 11, 12, 13, 14, 15, and 16 asserting legal and factual insufficiency of the evidence to support the jury findings 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22.

█ About appellant's complaint of the jury finding of an extra-hazardous crossing, it is the general rule that a crossing is extra-hazardous if the place is so peculiarly dangerous that a prudent person could not use the public road in safety unless the company employed a flagman or other extraordinary means to signal the approach of the train. If a crossing is extra-hazardous, it is incumbent upon the railroad to employ the necessary extraordinary means of warning. *Missouri, K. & T. Ry. Co. of Texas v. Magee*, 92 Tex. 616, 50 S.W. 1013 (1899); *Panhandle & Santa Fe Ry. Co. v. Karr*, 257 S.W.2d 486 (Tex.Civ.App.—Amarillo 1953), aff'd 153 Tex. 25, 262 S.W.2d 925 (1953); *Lundberg v. Missouri-Kansas-Texas R. Co. of Texas*, 232 S.W.2d 879 (Tex.Civ.App.—Waco 1950, writ ref'd n. r. e.). It has been further held that unless only one conclusion can be drawn from the facts describing the surroundings of any particular crossing, the question of extra-hazardous crossing is a question solely for the determination of the jury. *Fort Worth & Denver Railway Com-*

*pany v. Williams*, 375 S.W.2d 279 (Tex.Sup. 1964); *Tisdale v. Panhandle & S. F. Ry. Co.*, 228 S.W. 133 (Tex.Com.App.1921, opinion adopted).

█ Upon our review of the evidence, we find the testimony and exhibits presented were sufficient for the jury to find that the Sugar Road crossing was extra-hazardous. There was no grade in the road as it approached the crossing; there was but one crossbuck at the crossing and it was obscured by utility poles; and the track approached the road at 45° angle thereby increasing the difficulty of perceiving movement on the track. Joseph Nanus, James Evins, and Dr. Gary Montgomery, all testified that the crossing was difficult to see because of these factors.

█ About appellant's attack on the jury findings that neither the bell nor the whistle was sounded continuously as the train approached the crossing, by statute an engineer is required to sound the train's whistle or bell at least 80 rods (1,320 feet) from a public crossing. The bell must be sounded continuously until the engine has passed over the crossing. Tex.Rev.Civ.Stat. Ann. 6559h–11 (Supp.1976). Obviously, the purpose of this requirement is to warn of an approaching train. *Missouri-Kansas-Texas Railroad Company v. Wagner*, 400 S.W.2d 357 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.); *Texas & N. O. R. Co. v. Stratton*, 74 S.W.2d 741 (Tex.Civ.App.—San Antonio 1934, writ ref'd n. r. e.).

█ The testimony of James Evins, Richard Cray, Mrs. Richard Cray, and Matias Morin, all disinterested witnesses, was sufficient to support the jury's finding that the engineer failed to sound the whistle or bell. This evidence coupled with the reasoning in *Wagner* and *Stratton,* demonstrate the jury was correct in determining that this failure was a proximate cause of the collision. *Texas & P. Ry. Co. v. Brown,* 142 Tex. 385, 181 S.W.2d 68 (1944); *Missouri-Kansas-Texas Railroad Company v. Chesher,* 354 S.W.2d 645 (Tex.Civ.App.—Texarkana 1962, writ ref'd n. r. e.); *Port Terminal Railroad Association v. Noland,* 288 S.W.2d 276 (Tex.

Civ.App.—Galveston 1956, writ ref'd n. r. e.).

█ Next, we examine appellant's challenge to the jury findings that the train was traveling at an excessive rate of speed and that this was a proximate cause of the collision. In that regard, the record presents the following evidence about excessive speed and whether it was a proximate cause of the collision in question. The speed of the train was between 25 and 35 miles per hour. The crossing was located within the city limits of Edinburg and within the boundaries of the Southern Pacific's Edinburg Yard. James Ramsey, the engineer of the train, testified that he normally traveled 6 miles per hour within the city limits of Edinburg. Rules of operation for Southern Pacific trains were introduced which showed that a train of the type involved here was required to travel "with caution" within yard limits. Travel "with caution" was shown to mean travel at reduced speeds according to conditions; that it meant to be prepared to stop short of a train, engine, car, misplaced switches, derails, or other objects before reaching a stop signal, and where circumstances require the train must be preceded by a flagman. Mr. Ramsey testified that he was probably traveling at a speed in excess of 25 miles per hour within the yard and the city limits of Edinburg. We have already determined that the evidence supports the jury findings that the crossing was extra-hazardous and that no warnings were sounded as the train approached the crossing. We now hold that the evidence is sufficient to support the jury's finding that the speed was excessive.

The further determination of whether this rate of speed was a proximate cause of the collision was a question for the jury. *Texas & New Orleans Railroad Co. v. Day,* 159 Tex. 101, 316 S.W.2d 402 (1958). The testimony of the accident reconstruction experts showed that this collision could have been avoided if seconds or feet had been saved in either direction. Engineer Ramsey testified further that he saw the car and realized it was traveling at a high rate of speed but that he did not reduce his speed

or apply his brakes until he knew that the car could not stop. We hold this evidence sufficient to support the jury's determination of proximate cause. *Southern Pacific Company v. Stanley,* 473 S.W.2d 52 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); *Texas & New Orleans Railroad Co. v. Day.* 308 S.W.2d 245 (Tex.Civ.App.—Waco 1958), aff'd 159 Tex. 101, 316 S.W.2d 402 (1958).

■ The appellant's next contention is that there was insufficient evidence to support the jury's determination that the engineer was negligent in failing to keep a proper lookout and that there was insufficient evidence to support the jury's determination that such failure was a proximate cause of the collision. It appears to us that the evidence is legally and factually insufficient to support these findings. The engineer was clearly aware of Peralez' automobile prior to the point beyond which the car could not stop. This testimony was corroborated by the testimony of the witnesses, Bentley and Green. The engineer continued to watch Peralez' car until he became aware that it would be unable to stop and then he applied the emergency brakes. So the evidence shows that the engineer's lookout was proper and that his lookout, or lack of it, was not a proximate cause of the collision.

■ This brings us to the appellant's assertion that the jury findings that the engineer failed to properly apply his brakes and that such failure was a proximate cause of the collision were erroneous. It is the duty of the engineer and other trainmen to exercise ordinary care in the operation of a train. *Missouri, K & T Ry. Co. v. Thomas,* 87 Tex. 282, 28 S.W. 343 (1894); *Muniz v. Panhandle & Santa Fe Railway Company,* 285 S.W.2d 809 (Tex.Civ.App.—Amarillo 1955, writ ref'd n. r. e.). The facts of this case establish that Peralez' car was seen by the engineer in time to avoid the accident. The engineer did not, however, attempt to stop the train until it was clear that Peralez was not going to stop. Evidence concerning the braking mechanism of the train involved showed that a service reduction of the brakes would have saved three seconds in the application of the emergency brakes. It is undisputed that both the car and train reached the crossing simultaneously. The three seconds saved by a service reduction, therefore, would have prevented the collision. We find that this evidence supports the jury's determination that the engineer did not use ordinary care in applying the brakes.

■ Our consideration of appellant's complaints about the jury findings of failure to give proper warning and of improper condition of the crossing will be confined to our brief determination that the evidence is legally and factually sufficient to support these findings. Our discussion of the evidence and reasoning concerning the foregoing jury findings resolves the contentions here.

Our attention moves now to the appellant's challenge to the jury finding of discovered peril and proximate cause based on that discovery.

■ The doctrine of discovered peril has been clearly defined by the Courts of this State as follows: 1) an exposed condition brought about by the negligence of the plaintiff; 2) the actual discovery by defendant's agents of the perilous situation in time to avert by use of all the means at their command, commensurate with their own safety, injury to the plaintiff; and 3) the failure thereafter to use such means. *East Texas Theaters v. Swink,* 142 Tex. 268, 177 S.W.2d 195 (1944); *Turner v. Texas Co.,* 138 Tex. 380, 159 S.W.2d 112 (Tex.Com.App. 1942, opinion adopted). The key in our case, therefore, is whether the appellant's agents discovered the perilous position of Peralez in sufficient time before the collision that they could have through the exercise of reasonable care, in the use of all means at their command, avoided the accident.

■ The use of all means at hand does not restrict the engineer to stopping or slowing the train to avoid the accident. It includes, as well, the giving of an alarm by bell or whistle which would allow the plain-

tiff to extricate himself from the danger. *Texas & N. O. R. Co. v. Krashoff,* 144 Tex. 436, 191 S.W.2d 1 (1945); *Houston, E. & W. T. Ry. Co. v. Sherman,* 42 S.W.2d 241 (Tex. Com.App.1931, opinion adopted); *Flanigan v. Texas Pacific Railway Company,* 273 S.W.2d 110 (Tex.Civ.App.—El Paso 1954, writ ref'd n. r. e.); *Hines v. Arrant,* 225 S.W. 767 (Tex.Civ.App.—Texarkana 1920, writ ref'd n. r. e.).

■ The testimony of the defendant's engineer, James Ramsey, establishes through the expert testimony of Mr. Bentley, that he realized Peralez was in a position of peril at least 215 feet prior to the collision. At this point, the defendant could not have stopped the train until a point 206 feet past the crossing. He could have, however, sounded his whistle or bell giving a warning to Peralez thereby enabling him to have stopped or swerved his vehicle in time to have avoided the collision. The evidence, therefore, is clearly sufficient to support the jury findings on discovered peril and proximate cause.

We overrule appellant's points 9, 10, 11, 12, 14, 15, and 16. We sustain appellant's point 13 about the appellant's improper lookout. But this does not require a reversal of the case because there were several other findings on which the trial judge could predicate liability and base a judgment against Southern Pacific.

■ In several of its points, the appellant says that jury findings 25, 26, 31 and 32 were established by the evidence as a matter of law. These issues inquire about the contributory negligence of Peralez. We have carefully reviewed the record and we overrule appellant's points regarding contributory negligence, which points are 17, 18, 19 and 20. Even if we were to agree with appellant's contentions, the affirmative findings on discovered peril, absolved Peralez of any contributory negligence. *Sisti v. Thompson,* 149 Tex. 189, 229 S.W.2d 610 (1950); *Wilson v. Southern Traction Co.,* 111 Tex. 361, 234 S.W. 663 (1921); 40 Tex.Jur.2d Part 2 Negligence § 98 (1976).

All of which brings us to a group of points wherein the appellant complains of the trial court's admission of evidence offered by the appellee over the objection of the appellant and the exclusion of evidence offered by the appellant upon the objection of the appellee.

■ We deem it appropriate to note here that to obtain reversal of a judgment based upon an error of the trial judge, the appellant has a two-pronged burden. First, he must show that the trial judge's determination was in fact error; second, that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Southwestern Greyhound Lines v. Dickson,* 149 Tex. 599, 236 S.W.2d 115 (1951); *Wilson v. City of Port Lavaca,* 407 S.W.2d 325 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.); Rule 434, T.R.C.P. (1976).

■ In appellant's point 1, it complains of the trial court's refusal to allow rebuttal. It is fundamental law that either party is entitled to rebut testimony introduced by his adversary. *Markham v. Carothers,* 47 Tex. 21 (1877); *Lumbermen's Lloyds v. Jones,* 264 S.W.2d 759 (Tex.Civ.App.—Texarkana 1954), reversed on other grounds, 153 Tex. 379, 268 S.W.2d 909 (1954); *Hendrick v. Voss,* 334 S.W.2d 308 (Tex.Civ.App.—Dallas 1960, no writ).

■ The record reflects that appellant submitted the testimony of John Bentley as probative of appellee's contributory negligence. Appellee then placed its expert, George Green, on the stand rebutting Bentley's testimony. By the above stated rules, appellant, therefore, had the right of rebuttal on the evidence presented by appellee and it was probably error to deny such. Appellant must show, however, that the error was calculated to and probably did cause the rendition of an improper verdict. There is no such showing here in light of our determination that jury was correct in finding that the defendant failed to discover the peril of the plaintiff and act accordingly.

■ In its point 2, appellant contends that the testimony of Dallas Clark, area

supervisor of Peralez, about the promotability of Peralez, was speculative and, therefore, inadmissible. We believe that our recent holding in *Borak v. Bridge,* 524 S.W.2d 773 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.) is controlling about the admissibility of the type of evidence complained of here. The appellant's contention is, therefore, without merit.

Appellant's point 3 asserts error because cross-examination of Peralez on payment of hospital bills was not allowed. Specifically, appellant complains of the trial court's refusal to allow questioning in the following manner:

"I will agree that my questioning concerning the hospital bill, the doctor, and the medical bills, in the past, will be on the following basis: 'Were these bills paid by someone other than you or paid directly by someone other than you, or of the Southern Pacific Transportation Company?' And, I would not propose to interject the concept of insurance into that question."

We find no error in the trial court's refusal to allow this type of cross-examination in view of the rule that it is reversible error for the defendant to refer to plaintiff's insurance protection. *Ford v. Carpenter,* 147 Tex. 447, 216 S.W.2d 558 (1949). It is also recognized that the extent to which cross-examination is permitted rests largely within the discretion of the trial court and its ruling thereon will not be disturbed unless an abuse of discretion is shown. *Austin Road Company v. Ferris,* 492 S.W.2d 64 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.). No such showing is made here in view of the possible reference to insurance of Peralez.

The trial court did, however, allow cross-examination on whether Peralez had personally paid his medical bills and on whether he presently and previously had medical insurance to cover psychiatric and psychological treatment. This evidence coupled with Peralez' stipulation that approximately $4,200.00 of his medical bills had been paid and his admission that other sources had contributed to the payment of medical

bills all rendered any error in the refusal to allow cross-examination harmless error. Rule 434, T.R.C.P.

We agree with appellant's assertion in its point 4 that Leonel Ramirez' testimony about the contents of certain regulations was a violation of the best evidence rule. In so doing, we hold that the best evidence of the provisions and regulation of the State of Texas and The Department of Transportation of the United States as to standards and conditions at railroad crossings are the regulations themselves. 2 McCormick & Ray Evidence § 1563, p. 403 (1956). We disagree, however, that the admission of the testimony is so prejudicial that it could not be cured by instructions to disregard. The general rule is that an instruction to disregard will cure error except in extreme cases where it appears that evidence is clearly calculated to influence the minds of jurors and is of such character as to suggest impossibility of withdrawing the impression produced in their minds. *Edmiston v. State,* 520 S.W.2d 386 (Tex.Crim. App.1975); 1 McCormick & Ray Evidence § 29, p. 29 (1956). The trial court did eventually instruct the jury to disregard Ramirez' testimony.

Appellant objects to the following testimony of Claudio Castaneda as hearsay in his point 5.

"Q. You said once you had to help him turn. How did you know it was his back that was bothering him?

A. Well, from a conversation we had. I said, 'What is wrong with you, Charlie?' He said, 'Well, my back is killing me again.' Or, something of that nature."

The appellee had called the witness to testify to the pain suffered by him.

Statements of present pain are hearsay but they are admissible as an exception to the hearsay rule. *Salinas v. Casualty Insurance Company of California,* 323 S.W.2d 600 (Tex.Civ.App.—San Antonio 1959), aff'd 160 Tex. 445, 333 S.W.2d 109 (1960). Therefore, the testimony of Claudio Castaneda was properly admitted. Even if

this admission of this evidence was error, we find it harmless error. The evidence presented is merely cumulative of other evidence on Peralez' pain and could not have probably caused the rendition of an improper verdict

Appellant's point 6 complains of the trial court's refusal to admit into evidence a standard stop sign for comparison with the railroad's crossbuck. We find no error in the trial court's ruling. It is recognized that admissibility of demonstrative evidence rests within the discretion of the trial court, and its rulings will not be disturbed on appeal in absence of palpable abuse of discretion. *Franco v. Graham,* 470 S.W.2d 429 (Tex.Civ.App.—Corpus Christi 1971), reformed 488 S.W.2d 390 (Tex.Sup. 1972); *Briones v. Levine's Department Store, Inc.,* 435 S.W.2d 876 (Tex.Civ.App.— Austin 1968), aff'd 446 S.W.2d 7 (Tex.Sup. 1969); *Liberty Sign Company v. T. C. Arendale,* 433 S.W.2d 23 (Tex.Civ.App.—Fort Worth 1968, no writ). There was no abuse of discretion here in that the comparison of the stop sign and the crossbuck was accomplished through testimony of witnesses and exhibition of the sign before the jury; only the admission of the stop sign into evidence was refused. Appellant's points 1, 2, 3, 4, 5 and 6 are overruled.

Appellant's point 7 asserts error in the dismissal of Mrs. Florencia Garcia, a juror, and the continuing of the trial thereafter. Rule 292, T.R.C.P. allows for a juror to be excused if he is disabled. The disability which will be sufficient to justify the dismissal of a juror is largely left to the discretion of the trial judge. See 3 McDonald's Texas Civil Procedure, § 11.14, p. 172 (1970). Where there is illness of a member of the juror's family, the court may properly excuse the juror if it appears that his worry concerning the emergency will impair the juror's ability to satisfactorily perform his duties. See 3 McDonald's Texas Civil Procedure, supra. Rule 292 also provides that a verdict may be rendered by the concurrence of the same ten members of the original jury of twelve, and that if as many as three jurors are disabled the remaining nine may render a verdict.

The evidence in the present case reflects an illness in the juror's family. It further reflects that the trial court ordered the sheriff to bring the juror to the court. The juror was brought to the court, but the trial judge found that she was disturbed and unable to serve as a juror because of the illness of a member of her family. Clearly, therefore, the trial court was within its discretion in excusing the juror. Appellant's point 7 is overruled.

Appellant in its point 8 attacks the trial court's refusal to grant a mistrial because of opposing counsel's use of leading questions. The general rule is that the allowance of leading questions rests generally within the discretion of the trial court. *Texas Employers Insurance Association v. Dimsdle,* 440 S.W.2d 359 (Tex.Civ.App.— Dallas 1969, writ ref'd n. r. e.); *American Surety Company v. McCarty,* 395 S.W.2d 665 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.). Appellant, therefore, has a two-fold burden in showing reversible error based on the use of leading questions: 1) he must show abuse of discretion and 2) that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

A review of the record reveals that all objections by appellant to the leading questions of appellee were sustained and that the trial court instructed the jury that the objections were correct and directed appellee not to ask any further leading questions. This instruction cured any prejudice which could have resulted from counsel's continuous objections. A further review of the record evidences that the use of leading questions did not probably result in the rendition of an improper verdict. Especially is this so in that objections to leading questions were sustained as to both parties during the course of the trial. Appellant's point 8 is overruled.

Appellant's point 22 asserts that the judgment of jury is excessive in that it is not supported by the evidence. In deter-

mining if a verdict is excessive, the court must review only that evidence favorable to the verdict and the jury's determination will not be disturbed as excessive where there is any evidence to sustain it. *Hammond v. Stricklen,* 498 S.W.2d 356 (Tex.Civ. App.—Tyler 1973, writ ref'd n. r. e.) and cases cited therein; *Sunset Brick & Tile, Inc. v. Miles,* 430 S.W.2d 388 (Tex.Civ.App. —Corpus Christi 1968, writ ref'd n. r. e.); *Sumners Road Boring Inc. v. J. O. Thompson,* 393 S.W.2d 690 (Tex.Civ.App.—Corpus Christi 1965 writ ref'd n. r. e.). There must be some proof, circumstantial or direct, of bias or prejudice and in the absence of such proof, this Court is required to give every inference to the evidence in favor of the verdict. *Hammond v. Stricklen,* supra and the cases cited therein; *Sunset Brick & Tile, Inc. v. Miles,* supra; *Sumners Road Boring Inc. v. J. O. Thompson,* supra.

James Ramirez, Matias Morin and Raul Reyna, all testified to the pain suffered by plaintiff at the scene of the accident.

Peralez was hospitalized for 57 days. The hospital records for this period show heavy medication for pain and the testimony of Bertha Zavala, an L.V.N., also substantiates the jury's verdict on pain.

Dallas Clark, Fred Longoria, appellee Peralez, Claudio Castaneda, Pablo Pena and Noe Peralez, all testified to pain presently suffered by the appellee.

Dr. Pechero testified to the permanent nature of appellee's injuries which included circulatory problems, pain, chronic kidney infection, and limited mobility. Dr. Rios testified on the need for and the cost of plastic surgery. Tom Aycock testified to the consequences of the persistence of pain in the future. Bea Peralez testified to the change in the marital relationship of the parties and the hardship on the family.

Upon admission to the hospital, appellee's injuries were diagnosed as a shattered hip, broken and separated clavical bone, three to four cracked ribs, and collapsed lung. His vital signs at that time were critical. The testimony of the plaintiff was cumulative of the previously mentioned testimony and is exemplified by his reference to his hospi-

talization as a "torture chamber". Dr. Pechero and Tom Aycock testified about appellee's psychological problems caused by the severe pain suffered and the nature of his injuries.

Dallas Clark testified that the appellee's present salary as a parole officer for the Texas Youth Council was $12,800.00 per year. Mr. Clark further testified that appellee's pain interfered with his job and that he often found the appellee at home because of pain during working hours. Claudio Castaneda also testified that the plaintiff was often unable to work because of his injuries.

The plaintiff was 40 years old at the time of the accident and his position had a mandatory retirement at age 65. Peralez testified that after his retirement, he had planned to sell real estate. He had earned $1,207.43 from the sale of real estate in 1963 and 1964. Actuary tables showed him to have a life expectancy to 72 years.

Because personal injury damages are unliquidated and not capable of measurement by a certain standard, the jury has large discretion in fixing the amount of the award. *Gallegos v. Clegg,* 417 S.W. 347 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.); *Phillips Petroleum Company v. R. T. Burkett,* 337 S.W.2d 856 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.). In awarding these damages, the jury is entitled to consider the constant decrease in the value of the dollar. *Johnston Testers v. Rangel,* 435 S.W.2d 927 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e.); *Texas Consolidated Transportation Company v. Eubanks,* 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.). We are of the opinion based on the record as a whole that the amount awarded by the jury is not excessive. Appellant's point 22 is overruled. Further, appellant's request for remittitur in point 24 is overruled.

In its point 23, the appellant argues that the judgment below should be reversed because of the cumulative effect of the foregoing errors complained of. For the rea-

sons heretofore set out in our discussion of the foregoing points, we overrule point 23.

The judgment of the trial court is AFFIRMED.